## STUTSMAN COUNTY *v.* WALLACE.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF
DAKOTA.

No. 89. Argued November 13, 1891. — Decided January 4, 1892.

Upon the construction of the constitution and laws of a State, this court, as a general rule, follows the decisions of its highest court, unless they conflict with or impair the efficacy of some provision of the Constitution or of a law of the United States, or a rule of general commercial law.

In the case of an appeal from a judgment of the Supreme Court of a Territory, which was admitted as a State after the appeal was taken, a subsequent judgment of the highest court of the State upon the construction of a territorial law involved in the appeal is entitled to be followed by this court, in preference to its construction by the Supreme Court of the Territory.

Following the decision of the Supreme Court of North Dakota as to the tax-laws of Dakota Territory; *Held,*

    (1) That an erroneous decision of an assessor of taxes under those laws in the matter of exemptions does not deprive the tax proceedings of jurisdiction, and that, until such erroneous decision is modified or set aside by the proper tribunal, all officers with subsequent functions may safely act thereon; and that the rule of *caveat emptor* applies to a purchaser at a tax sale thereunder;

    (2) That under those laws a county treasurer, in making a sale for non-payment of taxes, acts ministerially, the law furnishing the authority for selling the property, and the warrant indicating the subjects upon which it is to be exercised; and he is protected so long as he acts within the statute;

    (3) That in the case of lands granted to the Northern Pacific Railroad Company, on which the costs of survey had not been paid and for which no patents had been issued, it was his duty to proceed to sell, notwithstanding those facts; and that, when the title of the purchaser at the tax sale failed, by reason of the lands not being subject to taxation, the county was not liable for the purchase money under c. 28, § 78 of the Political Code of 1877.

The rule that the known and settled construction of a statute of one State will be regarded as accompanying its adoption by another is not applicable where that construction had not been announced when the statute was adopted; nor when the statute is changed in the adoption.

THE court stated the case as follows:

Appellees brought an action in the District Court for the Sixth Judicial District of the Territory of Dakota, September

28, 1886, to recover from Stutsman County certain moneys which they had paid that county for lands which the treasurer of the county had assumed to sell to them in satisfaction of taxes wrongfully assessed thereon, and which sale was therefore invalid. They also sought to recover the amount of taxes paid by them on the land after the sale; and prayed judgment for the amounts paid and interest at thirty per cent per annum thereon from the dates of the payments respectively.

The allegations of the complaint were denied by the defendant, and the action was tried upon a statement of facts agreed to by the parties, which statement was adopted by the District Court as its findings of fact. These findings were, in substance, that the lands in question were part of the original grant by the United States to the Northern Pacific Railroad Company; that no patents had been issued for them; that the company earned the lands after the passage of the act of Congress of date July 15, 1870, in regard to the payment of the costs of surveying; that they were surveyed at the expense of the United States government, and no part of the cost and expenses of the survey had at the time of the tax sale been repaid by the railroad company to the United States.; that in the year 1880 the proper officers of the county assessed all the parcels of land mentioned in a schedule attached to the complaint, marked "A," and levied certain taxes thereon, to wit, the territorial, county, general school, and district school taxes, amounting in the aggregate to $5500, all of which remained unpaid October 1, 1882; that prior to that date the then county treasurer of that county offered the lands for sale for the non-payment of said taxes, and for the collection of the same, and sold them to Charles S. Wallace for sums amounting in the aggregate to $5221.75, and the treasurer then and there executed and delivered to Wallace the certificate of sale of the lands in the form provided by law to be issued upon the sale of land for non-payment of taxes, and Wallace paid the treasurer said amount; that in 1881 the officers of the county, duly authorized to assess property therein, assessed and levied taxes upon said parcels of land for the territorial, county and school taxes, and that Wallace, "in order to protect his tax lien thereon

and equitable title thereto, paid to the defendant's treasurer, as subsequent taxes upon said land, being the taxes so levied for the year 1881," the amount of $4699.25, none of which taxes so levied for the year 1881 had theretofore been paid; that in 1882 the officers of the county assessed and levied territorial, county, general school and district school taxes upon the parcels of land described in the schedule attached to the complaint and marked " B," all of which remained unpaid October 1, 1883, and the then treasurer of the county offered the lands for sale for the non-payment of the taxes, and for the collection of the same, and sold them to Wallace for the sum in the aggregate of $6033, and the treasurer delivered certificates of sale to Wallace, and he paid the said amount.

That in October, 1884, the Northern Pacific Railroad Company brought an action against the treasurer and Wallace, wherein a decree was entered adjudging the tax proceedings in question to be null and void, and enjoining the treasurer from making, and Wallace from receiving, any tax deed to the property named in schedule " A," and in September, 1885, a like action was brought which resulted in a similar decree as to the property named in schedule " B."

It was also found that James M. Martin had an interest in the tax receipts under an assignment from Wallace, and that prior to the commencement of this action plaintiffs tendered to the board of county commissioners of Stutsman County the tax certificates in question, " and offered to surrender said certificates to said county upon the payment of the amount so paid by said plaintiff, Charles S. Wallace, for the purchase of said lands at said sales, and for the payment of the subsequent taxes thereon as aforesaid, together with the interest thereon at the rate of thirty per cent per annum from the dates of such payment;" but defendant refused to pay that sum, or any part thereof, and the whole is still unpaid; and that no part of the land has ever been redeemed from the sales, nor from either of them, nor from the subsequent taxes paid as aforesaid.

The court found as conclusions of law that no taxes were due upon the lands at the time of their sale, and that they were sold " by the mistake and wrongful act of the defendant's

treasurer, the then county treasurer of Stutsman County, and that the plaintiffs are entitled to recover from the defendant the amount paid for said lands at said sales and the amount paid as subsequent taxes thereon, as hereinafter stated, together with thirty per cent interest thereon and on the whole amount so paid from and after the date of such payments, as herein-after specified, to this date," and thereupon directed judgment in favor of plaintiffs and against Stutsman County for $9921, with interest from and after October 1, 1882, at the rate of 30 per cent per annum, and for the amount of $6033, with interest thereon from and after October 1, 1883, at the rate of 30 per cent per annum, amounting in the aggregate, both principal and interest, to the sum of $35,800, together with costs and disbursements, and judgment was entered accordingly.

Exceptions were duly taken and motion for new trial made and overruled. The county thereupon carried the case, on appeal, to the Supreme Court of the Territory, by which the judgment was affirmed; whereupon an appeal was prayed and allowed to this court.

The parts of the revenue laws of the Territory of Dakota, referred to by counsel, are given in the margin.[1]

---

[1] Chapter 28 of the Political Code of the Territory of Dakota, as amended from time to time, and in force at the time of the levy and assessment of the taxes and sale of the lands referred to in the complaint, and at the date of the commencement of this action, contained a complete scheme for the assessment, levy and collection of taxes. (Revised Codes, Dakota, 1877, p. 111.) Chap. 15 of the Political Code in the Compiled Laws of 1887 has substantially the same provisions with a new numbering of the sections. (Comp. Laws, Dakota, 1887, p. 337.)

Sections 1, 2 and 3 name the classes of property liable to, and enumerate such as are exempt from, taxation. Subdivision one of section 2 states as exempt " the property of the United States, and of this Territory, including school lands."

Sections 4 to 26 provide for the assessment of "taxable property," and prescribe the manner of proceeding by the assessor in making up the assessment roll. He is required to list and assess " all taxable property, real and personal," each year, at its cash value at the place of listing on the day named, and can demand information of the owners, who are obliged to list all property subject to taxation, and must list property of which the owners are unknown, to "unknown owners,"

The form of the assessment roll is prescribed in sections 26 and 27, and

*Mr. John F. Dillon* for appellant. *Mr. Harry Hubbard* was with him on the brief.

---

by sections 28, 29 and 30 the equalization of the assessment roll by the board of county commissioners is provided for; and the board is given power to correct errors made in the list by the assessor and to add thereto any property, real or personal, subject to taxation, omitted by the owner or the assessor. During the session of the board any person, or his agent or attorney, feeling aggrieved by anything in the assessment roll, may apply to the board for the correction of any alleged errors in the listing or valuation of his property, whether real or personal, and the board may correct the same as shall be just.

Under sections 31 and 32 abstracts of assessments must be forwarded to the Territorial auditor, and the assessments may be equalized by the Territorial board for Territorial purposes, and for Territorial taxes.

The rates and date and levy of taxes and the preparation of duplicate tax lists by the county clerk with their form, one of which lists is retained by the county clerk and the other delivered, with the warrant of the county commissioners attached to the county treasurer, are prescribed by sections 33 to 39.

Section 40 reads thus:

" An entry is required to be made upon the tax list and its duplicate, showing what it is, and for what county and what year it is, and the county commissioners shall attach to the lists their warrants under their hand and official seal, in general terms, requiring the treasurer to collect the taxes therein levied according to law; and no informality in the foregoing requirements shall render any proceedings for the collection of taxes illegal. The county clerk shall take the receipt of the county treasurer on delivering to him the duplicate tax list with the warrant of the county commissioners attached, and such list shall be full and sufficient authority for the collection by the treasurer of all taxes therein contained."

Sections 41 to 44 relate to the collection of taxes and form of receipts.

Section 45 provides:

" It shall be the duty of the county clerk, on receiving any duplicate tax receipt from the treasurer, forthwith to examine the same and compare it with the tax list in his possession, and see if the total amount of taxes and the several amounts of the different funds are correctly entered and set forth in such receipt ; and in case it shall appear that the treasurer has not collected the full amount of taxes and interest which, according to the tax list and the terms of the receipt he should have collected, then the county clerk shall forthwith charge the treasurer with the amount such receipt falls short of the true amount, and the treasurer shall be liable on his official bond to account for and pay over the same."

Sections 46 to 51 relate to the treasurer's cash-book and the duplicate cash-book kept by the county clerk.

Section 52 is as follows:

" If on the assessment roll or tax list there be any error in the name of

*Mr. W. E. Dodge* (with whom were *Mr. J. H. Baldwin, Mr. D. B. Kurtz* and *Mr. John S. Watson* on the brief) for appellees.

the person assessed or taxed, the name may be changed, and the tax collected, from the person intended, if he be taxable and can be identified by the assessor or treasurer; and when the treasurer, after the tax list is committed to him, shall ascertain that any land or other property is omitted, he shall report the fact to the county clerk, who upon being satisfied thereof, shall enter the same upon his assessment roll, and assess the value, and the treasurer shall enter it upon the tax list, and collect the tax as in other cases."

Delinquency, penalty for non-payment and lien of taxes are provided for by sections 53 to 56, section 56 reading: "Taxes upon real property are hereby made a perpetual lien thereupon against all persons and bodies corporate except the United States and the Territory, and taxes due from any person upon personal property shall be a lien upon any real property owned by such person, or to which he may acquire a title."

Sections 57 to 59 treat of collection of taxes by distress and sale of personal property, and sections 60 to 69 of the sale of real property for taxes and the form of certificate of sale.

Section 62 reads:

"That on the first Monday of October in each year, between the hours of nine o'clock, A.M., and four o'clock P.M., the treasurer is directed to offer at public sale at the court house, or place of holding courts in his county, or at the treasurer's office, where, by law, the taxes are made payable, all lands, town lots or other real property, which shall be liable for taxes of any description for the preceding year or years, and which shall remain due and unpaid, and he may adjourn the sale from day to day until all the lands, lots or other real property have been offered, and no taxable property shall be exempt from levy or sale for taxes."

Section 67 is as follows:

"The purchaser of any tract of land sold by the county treasurer for taxes will be entitled to a certificate in writing describing the land so purchased, the sum paid and the time when the purchaser will be entitled to a deed, which certificate shall be assignable, and said assignment must be acknowledged before some officer having power to take acknowledgment of deeds. Such certificate shall be signed by the treasurer in his official capacity, and shall be presumptive evidence of the regularity of all prior proceedings. The purchaser acquires the lien of the tax on the land, and if he subsequently pay any taxes levied on the same, whether levied for any year or years previous or subsequent to such sale, he shall have the same lien for them, and may add them to the amount paid by him in the purchase, and the treasurer shall make out a tax receipt and duplicate for the taxes on the real estate mentioned in such certificate, the same as in other cases, and shall write thereon, 'sold for tax at public sale.'"

I. The lands sold by the defendant's treasurer to the respondent Wallace had not become part of the taxable prop-

---

Then follows the form of certificate.

Section 69 concludes with the provision: "And the treasurer is further authorized and required to sell as aforesaid all real estate in his county on which taxes remain unpaid and delinquent for any previous year or years."

Section 70 provides for a redemption of lands sold for taxes upon the payment of "the sum mentioned in this certificate, and interest thereon at the rate of thirty (30) per cent per annum from the date of purchase, together with all other taxes subsequently paid, whether for any year or years previous or subsequent to said sale, and interest thereon at the same rate from the date of such payment."

Section 73 is as follows:

"If no person shall redeem such lands within two years, at any time after the expiration thereof, and on production of the certificate of purchase, the treasurer of the county in which the sale of such lands took place shall execute to the purchaser, his heirs or assigns, in the name of the Territory, a deed of the land remaining unredeemed, which shall vest in the grantee an absolute estate in fee simple, in such land, subject, however, to all the claims which the Territory may have thereon for taxes or other liens or incumbrances."

Section 78 reads thus:

"When, by mistake or wrongful act of the treasurer, land has been sold on which no tax was due at the time, the county is to save the purchaser harmless by paying him the amount of principal and interest to which he would have been entitled had the land been rightfully sold, and the treasurer and his sureties shall be liable for the amount to the county on his bond, or the purchaser may recover the same directly from the treasurer."

Section 83 requires the county treasurer to pay over to the Territorial treasurer, on or before the first Monday of November, and at all other times on demand, all territorial funds collected by him, and prescribes his fees for such collection and receipt.

Section 84 reads:

"If the county treasurer shall wilfully and negligently fail to settle with the Territorial treasurer at the time and in the manner above prescribed by law, he shall forfeit to the use of the Territory the sum of five hundred dollars, which sum may be recovered of him, or his sureties, on suit brought by the Territorial treasurer in any court in this Territory having jurisdiction; or in case of failure of the Territorial treasurer to bring such suit, then any citizen of the Territory may bring the same."

Section 85 provides for the procuring by the territorial auditor of a list from the proper land office of all lands becoming taxable for the first time, in each county, and the forwarding of the list to the clerk of such county.

Sections 89, 95 and 96 are as follows:

"§ 89. In the case of dereliction of duty on the part of any officer or person required by law to perform any duty under the provisions of this

erty, within the Territory of Dakota at or prior to the date of such sale. Neither the Territory nor its officers could there-

---

act in any county in this Territory, such person shall thereby forfeit all pay and allowance that would otherwise be due him, and the county commissioners in any such county, on receiving satisfactory evidence of such dereliction or failure to perform as required by law any duty enjoined by this act, shall refuse to pay such person or persons any sum whatever for such services."

" § 95. If any county treasurer shall fail to make return, fail to make settlement, or fail to pay over all money with which he may stand charged, at the time and in the manner prescribed by law, it shall be the duty of the county clerk, on receiving instructions for that purpose from the Territorial auditor, or from the county commissioners of his county, to cause suit to be instituted against such treasurer and his sureties or any of them, in the District Court of his county.

" § 96. Whenever suit shall have been commenced against any delinquent county treasurer, as aforesaid, the board of county commissioners of such county may, at their discretion, remove such treasurer from office, and appoint some suitable person to fill the vacancy thereby created, as hereinbefore provided."

Sections 94 and 95 of chapter 21 of the Political Code, (Codes, 1877, p. 56,) prescribing the duties of the county treasurer, provide:

" § 94. He shall be the collector of taxes; shall keep his office at the county seat, and shall attend his office three days in each week. He shall be charged with the amount of all tax lists in his hands for collection, and credited with the amounts collected thereon, and the delinquent list, and shall keep a fair and accurate current account of the moneys by him received, showing the amount thereof, the time when, from whom, and on what account received, in cash, warrants, county or road orders; and if in warrants or orders, their kind, number or other designation, amounts for which they were drawn, interest due thereon and the amounts of the receipts thereon endorsed, if any; also of all disbursements by him made, showing the time when, to whom, on what account and the amount paid; and he shall so arrange his books that the amounts received and paid on account of each separate and distinct fund or appropriation, shall be exhibited in separate and distinct columns, or accounts, and so as to show whether the same was received or paid in cash, or warrants or orders, and if either of the latter, their designation and other particulars as above required; and the county treasurer shall at all times exhibit such accounts, when desired, to the Territorial, county or school officers, entitled to receive the same, and shall at any time pay over the balance in his hands to them, upon receiving proper vouchers.

" § 95. The books, accounts and vouchers of the county treasurer, and all moneys, warrants or orders, remaining in the treasury, shall at all times be subject to the inspection and examination of the board of county com-

fore lawfully assume jurisdiction to tax or sell the same; and it must be conceded that the money received by the county

---

missioners, and at the regular meetings of the board in January and July of each year, and at such other times as they may direct, he shall settle with them his accounts as treasurer, and for that purpose shall exhibit to them all his books, accounts and moneys, and all vouchers relating to the same, to be audited and allowed, which vouchers shall be retained by them for evidence of his settlement; and, if found correct, the account shall be so certified; if not, he shall be liable on his bond."

Section 84 of chapter 132 of the laws of North Dakota, enacted in 1890, (Laws North Dakota, 1890, 376, 408,) is as follows:

" When a sale of land as provided in this act is declared void by judgment of court, the judgment declaring it void shall state for what reason such sale is declared void. In all cases where any such sale has been or hereafter shall be so declared void, or any certificate or deed issued under such sale shall be set aside or cancelled for any reason, or in case of mistake, or wrongful act of the treasurer or auditor, land has been sold upon which no tax was due at the time, the money paid by the purchaser at the sale, or by the assignee of the State upon taking the assignment, and all subsequent taxes, penalties and costs paid by such purchaser or assignee, shall, with interest at the rate of ten per cent per annum from the date of such payment, be returned to the purchaser or assignee, or the party holding his right, out of the county treasury, on the order of the county auditor, and so much of said money as has been paid into the State treasury shall be charged to the State by the county auditor and deducted from the next money due the State on account of taxes. The county treasurer or auditor shall be liable on their bond for any loss occasioned by any such wrongful act. Whenever any sale of land, or certificate or deed, made or given under this act is declared void by judgment of court, unless the judgment declared the tax to be illegal, said tax and subsequent taxes, returned to the purchaser or assignee as provided in this section, shall remain a lien upon the land sold, and the county auditor shall advertise the same at the next succeeding annual sale, for the full amount of taxes, penalties and costs due on said piece or parcel of land."

The following are sections of chapter 69 of the Dakota General Laws of 1862 (Laws, 1862, p. 419):

" Sect. 36. On the first day of February, the unpaid taxes for the preceding year shall draw interest as hereinafter provided; and taxes upon real property are hereby made a perpetual lien thereon against all persons; and taxes due from any person on personal property shall be a lien on any real property owned by such person." " Sect. 39. On the first Monday in October, 1864, and in each year thereafter, the county treasurer is required to offer at public sale at the court house, or if there is no court house, at the office of the county treasurer, all lands on which taxes of any description for the preceding year or years shall have been delinquent and remain

treasurer for these lands, was received without authority of law; for the territorial statute, section 62, chapter 28, from which alone the treasurer derived any authority to sell lands for taxes, only authorized him to sell "lands, town lots or other real property, which shall be liable for taxes." The statute did not and could not lawfully authorize him to sell lands which were not liable for taxes, and which consequently could not be taxed, but which belonged to the public domain of the United States.

. The acts of the treasurer in selling the lands to the respondents were wrongful, because committed without authority of law, in violation of express enactments, defining and restricting the treasurer's authority and resulting in civil injury, not only to the owner of the lands unlawfully sold, but to the purchaser thereof wrongfully deprived of his money without consideration. The statute, section 73 of chapter 28, guaranteed to the respondents that if these lands were not redeemed within two years they should, upon production of their certificates of purchase, receive deeds conveying to them in the name of the Territory, all of the lands remaining unredeemed, which deeds should vest in them an absolute estate in fee simple. -

The breach of this guaranty did not arise through any defect in the tax proceedings, which the purchasers might have discovered upon an inspection of the record of such proceedings and which would bring them within the rule of *caveat emptor*, but by reason of the fact that the entire proceedings from their inception were absolutely void and without authority of law. The question in controversy, therefore, is not one of irregularity in the assessment of the taxes levied or of the sale by the county treasurer, but is one of entire

---

due, and such sale shall be made for and in payment of the total amount of taxes, interest and cost, due and unpaid on such real property." "Sect. 54. Immediately after the expiration of the term of three years from the date of the sale of any land for taxes under the provisions of this act, the treasurer then in office shall make out a deed for each lot of land sold and remaining unredeemed, and deliver the same to the purchaser upon the return of the certificate of purchase."

absence of power or authority in the taxing officers to assess and the treasurer to collect or make sale of the lands for their payment.

The rule of *caveat emptor* as applied to tax sales purchases has never, to our knowledge, been held to apply to a case where there was no charge or tax due. In such case nothing passes by it to the purchaser. No right to receive or retain the money exists in the officer making the sale, and in such cases the courts have uniformly held that the purchaser, who thus paid his money and got nothing for it, should have the same returned to him. And so whenever the question has been raised, the courts have not hesitated to protect bidders at public sales, when there existed, from any cause, an entire absence of power to make the sale, refusing to enforce the payment of the bid or ordering restitution thereof. And in such a case it matters not that the officer making the sale mistakenly supposed he had full power to do so. *Todd* v. *Dowd*, 1 Met. (Ky.) 281; *Washington* v. *McCaughan*, 34 Mississippi, 304; *Riddle* v. *Hill*, 51 Alabama, 224; *Boykin* v. *Cook*, 61 Alabama, 472; *Burns* v. *Ledbetter*, 56 Texas, 282; *Laughman* v. *Thompson*, 6 Sm. & Marsh. 259; *Bartee* v. *Tompkins*, 4 Sneed, 623; *Norton* v. *Supervisors*, 13 Wisconsin, 611; *Chapman* v. *City of Brooklyn*, 40 N. Y. 372; *Commonwealth Bank* v. *Mayor of New York*, 43 N. Y. 184; *Newman* v. *Supervisors*, 45 N. Y. 676; *Schwinger* v. *Hikok*, 53 N. Y. 280; *Preston* v. *Boston*, 12 Pick. 7; *Corbin* v. *Davenport*, 9 Iowa, 239; *Phillips* v. *City of Hudson*, 31 N. J. Law (2 Vroom) 143; *Dodd* v. *Neilson*, 90 N. Y. 243; *Commissioners* v. *Young*, 18 Kansas, 440; *Clapp* v. *Pine Grove Township*, 138 Penn. St. 35.

Applying the same rule it has been repeatedly held that taxes illegally imposed and collected may be recovered back. *Slack* v. *Norwich*, 32 Vermont, 818; *Dorr* v. *Boston*, 6 Gray, 131; *Gillette* v. *Hartford*, 31 Connecticut, 351.

The rule that a purchaser cannot recover the money paid by him at a void tax sale, is based upon the principle that he is a volunteer in the payment of charges levied on lands subject to taxation, and has been applied only in cases where

jurisdiction existed and where the title of the purchaser failed by reason of non compliance with the statute causing irregularities in the assessment levy or sale as appeared by the records which were held to be constructive notice to the purchaser of such irregularities, and to this class of cases only has the rule of *caveat emptor* been applied. *Sullivan* v. *Davis*, 29 Kansas, 28; *Lynde* v. *Inhabitants of Melrose*, 10 Allen, 49; *Rice* v. *Auditor General*, 30 Michigan, 12; *Logansport* v. *Humphrey*, 84 Indiana, 467.

Assuming that the assessor had no jurisdiction of the subject matter, the treasurer was not protected by his warrant in the sale of the lands in question, and his acts were wrongful under the numerous decisions of this court pertinent to the subject.

When a court or other officer acts without jurisdiction of the subject matter, all is void and such acts are regarded in law as nullities, constituting no justification, but all persons concerned in executing such judgments or any process predicated thereon are trespassers and liable to an action thereon. *Griffith* v. *Frazier*, 8 Cranch, 9; *Dynes* v. *Hoover*, 20 How. 65; *Erskine* v. *Hohnbach*, 14 Wall. 613; *Hayes* v. *Pacific Mail Steamship Co.*, 17 How. 596.

The statute, section 78, chapter 28, political code (section 1629, Compiled Laws of Dakota) is cumulative and not exclusive. It is merely declarative of the common law rule "that an action lies for money paid by mistake or upon a consideration which happens to fail, or for money got through imposition." *Moses* v. *Macferlan*, 2 Burrow, 1005; *Louisiana* v. *Wood*, 102 U. S. 294.

The States of Iowa, Nebraska, Kansas and Wisconsin had previously enacted similar statutes to the one above quoted, and while no two of them were couched in exactly the same language, they were prompted by a common object, designed to subserve a common purpose and in each instance, when construed by the highest courts of those States so as to give effect to the object designed by the legislature, they have received a common construction.

The statute in question (section 78 of chapter 28) had its

origin in the statutes of Iowa and exists there to-day in the same form as originally enacted. It was taken by Nebraska from Iowa and by Dakota from Nebraska. It is true that in the latter State the statute was, prior to the decisions by the Supreme Court of that State, (*Coulter* v. *Mahaska Co.*, 17 Iowa, 92; *Scott* v. *Chickasaw Co.*, 46 Iowa, 253; *Morris* v. *County of Sioux*, 42 Iowa, 416,) amended so as to read "When by mistake of the treasurer *or other officer* lands are sold" etc.; but those decisions clearly show that no significance was given to the words contained in the amendment by the Supreme Court of Nebraska. The Supreme Court of Dakota, therefore, in the construction of this statute followed the familiar rule adopted by this court in numerous cases, by adopting the construction of the courts of those States by whose legislatures the statute was originally adopted. The statute having been taken from Iowa and Nebraska, the legislature in adopting it, adopted the construction put upon it by the courts of those States, which construction became part of the law itself. *McDonald* v. *Hovey*, 110 U. S. 619; *Metropolitan Railroad Co.* v. *Moore*, 121 U. S. 558.

Mr. Chief Justice Fuller, after stating the case, delivered the opinion of the court.

Appellees recovered judgment for the amounts paid and thirty per cent per annum interest thereon. Interest at this rate was that which purchasers at tax sales received upon redemption, and section 78 of chapter 28 of the Political Code of the Territory of Dakota provided that the purchaser, who came within its terms, should be saved harmless, by being paid the principal and interest to which he would have been entitled if the land had been rightfully sold. Unless the recovery was justified under the statute, this judgment must be reversed.

Stutsman County is one of the counties of North Dakota, which was admitted into the Union after this cause was docketed in this court. In *Tyler* v. *Cass County*, 48 N. W. Rep. 232, not yet published in the official reports, where the state of facts was substantially such as is disclosed by this record, the Supreme Court of the State decided that no recov-

ery could be had by the purchaser at a tax sale whose title failed, either at common law or under the section in question, which in 1885 had been amended in a point not material here, and became § 1629 of the Compiled Laws of Dakota of 1887.

It is well settled that upon the construction of the constitution and laws of a State this court, as a general rule, follows the decisions of her highest court, unless they conflict with or impair the efficacy of some provision of the Federal Constitution or of a Federal statute or a rule of general commercial law. *Norton* v. *Shelby County*, 118 U. S. 425, 439; *Gormley* v. *Clark*, 134 U. S. 338, 348.

Our mandate in this case must be issued to the state Supreme Court, which will in its turn direct the state court succeeding to the District Court of the Territory to proceed in conformity to our judgment. 25 Stat. 683.

The parties are citizens of North Dakota. The litigation proceeded upon the recognition and allowance of the exemption of the lands from taxation under the laws of the United States, and no Federal questions were involved. *Tyler* v. *Cass County*, *ante*, 288. The case belongs to the class upon which the local decisions are ordinarily given controlling effect, and the adjudication of the highest tribunal of the State in the case cited should be considered in the light of this rule, though the appeal is from the Supreme Court of the Territory, which reached the opposite conclusion.

The Supreme Court of the State held that lands which were part of the original grant to the Northern Pacific Railroad Company and had been surveyed at the expense of the United States and earned by the company after the passage of the act of Congress of July 15, 1870, but no part of the survey fees had been repaid to the United States, although they had been disposed of by the company and conveyed to third parties, who were in possession, were not in fact taxable; yet that, since land was a subject of taxation in Dakota Territory, *prima facie* they were taxable; that the assessor being a judicial official, where property is exempt from taxation by class and not by specific description, has full jurisdiction, and it is

his duty to decide in each instance whether or not a particular piece of property falls within any of the exempted classes, and in this respect the source of the law that establishes the exemption is immaterial; that an erroneous decision of an assessor in the matter of exemptions does not deprive the tax proceedings of jurisdiction, but until such erroneous decision is modified or set aside by the proper tribunal all officers with subsequent functions may safely act thereon; that the rule of *caveat emptor* applied to the plaintiff; and that there was no right of recovery at common law. It was further held that under the law in force when the tax sale in question in the case was made, the treasurer, in the matter of the collection of the taxes, was purely a ministerial officer, and when he received the duplicate tax list with the warrant of the county commissioners attached, if such process was fair on its face and contained nothing that would apprise the treasurer of any defects or infirmities, and it did not appear that the treasurer had any knowledge of any defect or infirmities, such treasurer was fully protected from personal liability in collecting the taxes upon all property contained in his list, so long as he acted strictly within the statute; that the law furnished his authority for selling the property for delinquent taxes; that the warrant with the tax list attached gave him the subjects upon which to exercise such authority; that the statute which required the treasurer to " sell all lands liable for taxes of any description for the preceding year or years," meant all lands liable to taxation as shown by the process in his hands, and he could not refuse to sell lands on his list nor could he sell lands not on his list; that the sale of the lands in that case was neither the mistake nor the wrongful act of the treasurer within the meaning of section 1629, Compiled Statutes; and that the plaintiff had no right of action under that section. And further, that section 84 of chapter 132 of the laws of North Dakota for 1890 had no application to a sale of lands made before the enactment of said chapter.

Section 1629 of the Compiled Laws is identical with section 78, chapter 28, of the Dakota Political Code, except that in lieu of the words, " the amount of principal and interest to

which he would have been entitled had the land been rightfully sold," the words, " the amount of principal and interest at the rate of twelve per cent per annum from the date of sale," have been substituted. Compiled Laws, 1887, p. 362.

Section 78 is as follows: " When, by mistake or wrongful act of the treasurer, land has been sold on which no tax was due at the time, the county is to save the purchaser harmless by paying him the amount of principal and interest to which he would have been entitled had the land been rightfully sold, and the treasurer and his sureties shall be liable for the amount to the county on his bond, or the purchaser may recover the same directly from the treasurer."

The county is thus made liable in the first instance, " when by mistake or wrongful act of the treasurer, land has been sold on which no tax was due at the time," while a personal liability to the purchaser is directly imposed upon the treasurer, who with his sureties is also made liable for the amount to the county on his bond. This statutory provision is not the same as that of the act of North Dakota of 1890, and many similar State statutes, making counties generally liable to the purchaser at tax sales, when the sales are declared void. Nor is it the same as had previously existed. The law for the organization of the Territory of Dakota was passed March 2, 1861, and on the 15th of May, 1862, an act of its first legislative assembly was approved, which formed chapter 69 of its laws, entitled, " Revenue." (Laws Dakota, 1862, vol. 1, p. 419.)

Section 58 read thus: " When, by mistake or unlawful act of the treasurer, land has been sold on which no tax was due at the time, or whenever land is sold unlawfully in consequence of any other mistake or irregularity rendering the sale void, the county shall hold the purchaser harmless by paying him the amount of principal and interest and costs to which he would have been entitled had the land been rightfully sold, and the treasurer and his sureties will be liable to the county for the amount of his official bond: *Provided*, That the treasurer or his sureties shall be liable only for his own or his deputy's acts."

The treasurer was the collector of taxes and directed to sell,

but he was not made liable if the sale were unlawful through mistakes or irregularities chargeable to others, but only for his own acts.   When in section 78 of c. 28 of the Code of 1877, the words, " or whenever land is sold unlawfully, in consequence of any other mistake or irregularity rendering the sale void," were dropped out, the proviso was also exscinded as no longer necessary.

Under it as recast the county is not ultimately to respond. The liability falls upon the treasurer in either event, but does not arise save where the treasurer is himself in fault in selling the land.   The wrong arising from selling land for taxes on which no tax is due, is not necessarily the result of the mistake or wrongful act of the treasurer ; and upon the facts in this record, if he were protected by his warrant and acted strictly within the statute, he could not be held nor, of course, could the county, under that section.

We agree with the learned State Supreme Court that the treasurer acted in the sale as a ministerial officer, and that while the law furnished authority for selling property for delinqent taxes, the warrant furnished the subjects upon which to exercise the authority.

In *Erskine* v. *Hohnbach,* 14 Wall. 613, 616, Mr. Justice Field, speaking for the court, said : " Whatever may have been the conflict at one time, in the adjudged cases, as to the extent of protection afforded to ministerial officers acting in obedience to process, or orders issued to them by tribunals or officers invested by law with authority to pass upon and determine particular facts, and render judgment thereon, it is well settled now, that if the officer or tribunal possess jurisdiction over the subject matter upon which judgment is passed, with power to issue an order or process for the enforcement of such judgment, and the order or process issued thereon to the ministerial officer is regular on its face, showing no departure from the law, or defect of jurisdiction over the person or property affected, then, and in such cases, the order or process will give full and entire protection to the ministerial officer in its regular enforcement against any prosecution which the party aggrieved thereby may institute against him, although serious errors may have

been committed by the officer or tribunal in reaching the conclusion or judgment upon which the order or process is issued."

Things may be void as to all persons and for all purposes, or as to some persons and for some purposes, and although the assessor may have been without jurisdiction over the particular property, yet as he had general jurisdiction to list property for taxation, and there is no pretence that there was anything on the face of the warrant to apprise the treasurer of the lack of jurisdiction, he cannot be held, in executing the warrant, as guilty of a wrongful act within the intent and meaning of this statute.

The 40th section of chapter 28 shows that the warrant required the treasurer to collect the taxes therein levied according to law, and that the duplicate tax list with the warrant of the county commissioners attached was full and sufficient authority for the collection by the treasurer of all taxes therein contained. It was his duty to proceed, and he cannot be held to have been bound by the extrinsic fact that the costs of survey had not been paid, and that, therefore, these particular lands were not taxable.

We think the conclusion inadmissible that the legislature intended that the treasurer should be held responsible for the mistakes or wrongful acts of other officers, when acting in strict compliance with the exigency of the process committed to him.

It has been ruled that where an officer knows of facts *aliunde* his process, which render the proceedings void, he is not protected; but that question does not arise here, as no such knowledge on the part of the treasurer is found; nor is there any basis for the contention that the treasurer made any mistake of fact in the premises.

It was earnestly argued that, inasmuch as by section 62 the treasurer is directed to sell all lands " which shall be liable for taxes," there is just as much a question of law or fact presented for his decision as is presented to a sheriff when he is directed to sell the property of a defendant on execution, or required to determine the exemption of property from execution; but this ignores the fact that the warrant commanded him to col-

lect the taxes from the specific property against which they were levied, and that he had no discretion to use, no judgment to exercise, and no duty to perform except to sell the particular property for delinquency. *Buck* v. *Colbath*, 3 Wall. 334, 343.

Comparing sections 36, 39, and 54 of chap. 69 of the Laws of 1862 with sections 56, 62, and 73 of chap. 28 of the Code of 1877, (these will be found in the margin, *ante*, 298, 299,) it is contended that the legislature, in changing the language requiring the county treasurer to sell " all lands on which taxes of any description for the preceding year or years shall have been delinquent and remain due," so as to read : " all lands, town lots or other real property, which shall be liable for taxes of any description for the preceding year or years, and which shall remain due and unpaid," and adding the words: " And no taxable property shall be exempt from levy and sale for taxes," must be assumed to have intended to impose upon the treasurer the duty of determining in each instance whether or not the property was taxable, and that this view is confirmed by the amplification of the clause requiring the treasurer to execute a deed to the purchaser. We do not think so. If, as the state Supreme Court remarks, the treasurer must disregard his warrant and sell no property not liable for taxes, even though the same appeared on his list, it would be equally true that he must sell all lands that were liable for taxes, although the same did not appear on his list.

Under section 37 of chap. 28 of the Code of 1877, as under section 1593 of the Compiled Laws, the clerk was directed to prepare a list which should contain all the taxable lands in the county with the names of the persons or parties in whose name each subdivision was listed, and also a duplicate of the tax list when completed, and, retaining one, to deliver the other to the treasurer, and to these lists the warrants are attached. The clerk makes the list from the assessment roll after the taxes are levied, and can no more change it than the treasurer can ; and the order is to sell lands shown to be liable by being upon the list.

By section 56 it was provided that taxes due from any

person upon personal property should be a lien upon any real property owned by such person or to which he may acquire a title; and hence the argument that the amendment of section 39 of chap. 69 of the Laws of 1862 by section 62 of chap. 28 of the Code of 1877, was objectless except upon the basis of appellee's contention, is completely answered by the Supreme Court in pointing out that in order to give effect to the provision relative to the lien on realty of taxes on personalty, it was necessary to direct all lands to be sold that were "liable for taxes of any description."

The language of section 73 of chapter 28 of the Code of 1877, that a tax deed shall run "in the name of the Territory," and "shall vest in the grantee an absolute title in fee simple, in such land," whatever weight may be attached to it in a different connection, contributes nothing to sustain the position that where such title fails, recovery can be justified under section 78.

It is said that section 78 had its origin in a statute of Iowa, was thence taken into the statutes of Nebraska and by the Territory of Dakota from Nebraska, and several decisions of the highest courts of Iowa and Nebraska are referred to as giving the provision a construction differing from that of which we approve. We do not find that any decision of that tenor had been announced prior to the adoption of the provision by the legislature of Dakota, and the rule that the known and settled construction of a statute of one State will be regarded as accompanying its adoption by another, is inapplicable. And the terms of the statutes of Iowa and Nebraska considered in the cases cited, were so different from that involved here, as to deprive the decisions of the weight which might justly be ascribed to them if they had argued and disposed of the precise question before us.

*The judgment is reversed and the cause remanded to the Supreme Court of the State of North Dakota for further proceedings in conformity to law.*