JOSEPH McCADDEN, PETITIONER-RESPONDENT, v. WEST END BUILDING & LOAN ASSOCIATION, A CORPORATION, RESPONDENT-PROSECUTOR.

Submitted October 1, 1940—Decided December 31, 1940.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and PERSKIE.

For the prosecutor, *William B. McMichael* (*Henry Harris*, of counsel).

For the respondent, *David Roskein* (*Harry Cohn*, of counsel).

The opinion of the court was delivered by

PERSKIE, J. This workmen's compensation case presents two questions—one factual and one legal. The factual question, concededly a medical one, that requires decision is whether petitioner had established a causal connection between the loss of his left eye and the accident on July 15th, 1938, which admittedly arose out of and in the course of his employment by prosecutor. The legal question is whether or not the loss of a previously defective eye entitles petitioner to the full statutory allowance for the "loss of an eye." The facts are, substantially, as follows:

Joseph McCadden, petitioner below, who states his age to be forty-six, was employed as superintendent or janitor for an apartment house owned by the prosecutor building and loan association. While engaged in his duties of washing down the stairs of said apartment house, petitioner accidently splashed some washing powder into his left eye. He immediately rubbed that eye with his wet hand and then went to his apartment to bathe it with boric acid. The eye, however, became inflamed and grew painful. Three days after the occurrence, petitioner sought the aid of Dr. Keim, a general practitioner, who did minor work on eye cases.

Dr. Keim examined and treated the petitioner for approximately ten days and then referred him to Dr. Ney, an eye specialist, who, after failing to relieve petitioner from his pain, removed, by an operation on August 18th, 1938, petitioner's left eye. It is for the loss of this eye that petitioner seeks compensation.

It appears that some twenty-seven or twenty-eight years prior to the instant accident a nut or bolt had struck petitioner's left eye apparently causing a partial dislocation of the lens and very badly, if not entirely, impairing his vision. The eye became limited to the discernment of objects only, although petitioner otherwise suffered no pain or discomfort. After the accident on July 15th, 1938, however, the use of the left eye became restricted to perception of light only and the pain became so severe that Dr. Ney was forced to and did remove the eye.

Dr. Keim, who was the first doctor to examine the petitioner after the accident on July 15th, 1938, and who treated the petitioner for approximately ten days, was called as a witness by petitioner. He stated that he found petitioner's condition to be acute, rather than of long standing. Dr. Ney, the eye specialist who removed the eye and who treated the petitioner both before and after the operation, also called as a witness by petitioner, testified that in his opinion, the accident of July 15th, 1938, the ensuing acute symptoms, and the subsequent removal of the left eye, were causally related.

Dr. L. Dias, who was called as a witness by the prosecutor, examined the petitioner only once, on August 3d, 1938. He testified to the effect that the injury twenty-seven or twenty-eight years prior to the one in question had caused a partial dislocation, which, by coincidence, became complete at or about the time of the washing powder incident. He admitted, however, that a trauma to an eye which had a partially dislocated lens would probably cause more damage and probably result in the loss of that eye. Although he said that dust, or powder, would not cause such a trauma, he did not say whether or not a wiping or rubbing of the inflamed eye by petitioner might so have caused it.

Dr. Hurff, called as a witness by prosecutor, had examined the petitioner only once—on July 30th, 1938. He testified that there was no connection between the accident of July 15th, 1938, and the subsequent removal of the eye. On cross-examination, however, he testified that the complete dislocation "could have been caused by the entrance of washing fluid into the eye."

Dr. Rados, who at no time examined the petitioner, was called to answer hypothetical questions by prosecutor. He testified that there was no relationship between the removal of the employe's eye and the accident of July 15th, 1938, when the washing powder entered same. He pointed out that the lens could not have been completely dislocated for twenty-seven years and attributed the events and symptoms which immediately followed the washing powder incident to a coincidence.

In this posture of the proofs, the Workmen's Compensation Bureau dismissed the petition—relying chiefly upon the testimony of Dr. Hurff, who had examined the petitioner upon the reference of Dr. Keim—petitioner's own treating doctor.

On appeal to the Essex County Court of Common Pleas, Judge Hartshorne reversed the bureau and found that petitioner was entitled to recover the full statutory amount for the loss of his left eye, plus costs. See *McCadden* v. *West End Building and Loan Association,* 18 *N. J. Mis. R.* 395; 13 *Atl. Rep.* (*2d*) 665.

Prosecutor then secured this writ of *certiorari* and it now becomes our duty independently to appraise the evidence and to determine the facts according to the preponderance of probabilities. *Gilbert* v. *Gilbert Machine Works, Inc.,* 122 *N. J. L.* 533; 6 *Atl. Rep.* (*2d*) 213. The burden is upon the petitioner to show that the accident was one of the contributing causes without which the loss of the eye would not have resulted. *Calicchio* v. *Jersey City Stock Yards Co.,* 125 *N. J. L.* 112; 14 *Atl. Rep.* (*2d*) 465.

*As to the factual question.* The medical witnesses unanimously agree on the fact that petitioner's eye was, unknown to him, partially dislocated before the washing powder incident. Dr. Keim, who first treated the petitioner, and Dr. Ney, who treated and removed the eye, were both of the opinion that the causes leading up to the removal of the eye were not of long standing. Dr. Keim unhesitatingly testified that there was a "causal relationship between the accident and the subsequent removal of the eye," and that "I do not believe that the accident some twenty-seven years ago was the cause of it."

Dr. Rados, who neither treated, nor examined petitioner, was the only medical witness who testified, without any contradiction or backtracking, that there neither was nor could be any causal relationship between the accident on July 15th, 1938, and the removal of the eye. Dr. Dias, who examined the petitioner only once, admitted that causes beside mere coincidence could "probably cause more damage and possible result in the loss of that eye." Dr. Hurff, who examined petitioner only once and who had never treated petitioner (and

upon which doctor's testimony the bureau put strong reliance) admitted upon cross-examination that the complete dislocation of the lens of petitioner's eye could have been caused by the washing fluid.

We are entirely satisfied, by the proofs, that the washing powder itself, or the instinctive wiping of the eye that occurred upon the entrance of the same into the petitioner's eye, or both, completed the previous partial dislocation of the lens. The petitioner suffered no pain nor discomfort for twenty-seven years. To attribute the sudden functional change to coincidence, would require us to ignore the testimony of the doctors who treated or examined the eye and to substitute in its stead imaginative or suppositive testimony of experts. We, therefore, find that petitioner did establish a causal relation between the loss of his eye and the accident which occurred on July 15th, 1938.

*As to the legal question.* The Workmen's Compensation act provides for payments "for the loss of an eye, sixty-six and two-thirds per cent. of daily wages during one hundred weeks." *R. S.* 34:15-12 (s). In the instant case, petitioner's eye was in a defective condition prior to the washing powder accident resulting in the order for compensation. The question here presented is whether the above provision for the loss of an eye includes the loss of a defective eye. We think that the provision in question includes such a loss.

The provision for the loss of an eye is surrounded by nineteen similar provisions, all of which, with one exception, refer to losses of other members of the body. The one exception refers to "the total loss of hearing in one ear," there being no provisions for the loss of an ear. At the end of the list of provisions providing for specific losses of members of the body, there is a provision (w) covering "all losses or other cases involving permanent loss, or where the usefulness of a member or any physical function is permanently impaired." Under provision (w) the "* * * duration of compensation shall bear such relation to the specific periods of time stated in the above schedule as the disabilities bear to those produced by the injuries named in the schedule * * *."

The House of Lords under the British Workmen's Compensation act of 1906 (in substance not unlike ours) has held that an accident necessitating the removal of a sightless eye as a result of which the workman, as a "one-eyed man," was unable to obtain work in his employment, although his ability to work remained exactly as it was before, was within the act. See discussion of cases in *Everhart* v. *Newark Dyeing, &c., Co. (Court of Errors and Appeals)*, 119 *N. J. L.* 108 (at *pp.* 112, 113); 194 *Atl. Rep.* 294.

Our Court of Errors and Appeals has held that an injury causing the removal of an eye may be such that the employe is entitled to compensation both under provision (s) and also under provision (w)—the injury being "separate and independent." *Cf. Sigley* v. *Marathon Razor Blade Co., Inc.,* 111 *N. J. L.* 25; 166 *Atl. Rep.* 518.

In light of what has already been written, our careful study of our act impels the conclusion that the legislature did not, for example, intend to fix compensation for the loss of an ear irrespective of its functional value to the injured party but that the legislature did intend to, and did, in fact, fix compensation for the loss of an eye irrespective of its functional value to the injured party. Obviously, physical injuries to an eye that do not constitute "loss of an eye" are compensable under subdivision (w), but the "loss of an eye" irrespective of its condition prior to its loss is compensable to the full statutory amount as provided by subdivision (s). We so hold. Such a holding, in our opinion, finds support by the great weight of authority which, with few exceptions, allows the recovery in the full statutory amount for the loss of a previously defective eye. See cases collated in *McCadden* v. *West End Building and Loan Association, supra* (at *pp.* 395-397), and 8 *A. L. R.* 325; 73 *A. L. R.* 708; *contra,* 24 *A. L. R.* 1467.

The writ is dismissed, with costs.