**IACONE v. CARDILLO et al.**
No. 57, Docket 22659.

United States Court of Appeals
Second Circuit.

Argued Nov. 10, 1953.

Decided Dec. 9, 1953.

Christopher L. Ribaudo, New York City, for appellant.

Leonard P. Moore, U. S. Atty., New York City (Stuart Rothman, Sol. of Labor, Ward E. Boote, Asst. Sol., and Herbert P. Miller, Atty. U. S. Dept. of Labor, Washington, D. C., of counsel), for appellee Cardillo.

Galli & Locker, New York City (Urban S. Mulvehill, New York City, of counsel), for appellees Northern Dock Co., Inc. and Travelers Insurance Co.

Before SWAN, FRANK and MEDINA, Circuit Judges.

MEDINA, Circuit Judge.

The question whether claimant is entitled to a scheduled award for the loss of an eye industrially blind as the result of a previous, non-industrial accident, is a novel one under the federal Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. Decisions on this problem under the various state workmen's compensation laws are in hopeless conflict. Supporting the decision below: London Guarantee & Accident Co. v. Industrial Comm., 1924, 76 Colo. 155, 230 P. 598 [but cf. Downs v. Industrial Comm., 1942 109 Colo. 12, 121 P.2d 489]; Dyer v. Abrasive Dressing & Tool Co., 1946, 315 Mich. 215, 23 N.W.2d 640; Rector v. Roxana Petroleum Corp., 1925, 108 Okl. 122, 235 P. 183 [but cf. Eagle-Picher Mining & Smelting Co. v. Murphy, 1934, 169 Okl. 180, 35 P.2d 952]; Brown v. State Workmen's Insurance Fund, 1938, 131 Pa. Super. 226, 200 A. 174; Beyer v. Department of Labor, 1943, 17 Wash.2d 29, 134 P.2d 948, opinion amended 137 P.2d 1016. Contra: Morgan v. Adams, 1941, 127 Conn. 294, 16 A.2d 576; Justice v. Arkansas City Flour Mills Co., 1938, 147 Kan. 402, 76 P.2d 802; Haas v. Globe Indemnity Co., 1931, 16 La.App. 180, 132 So. 246; Kraushar v. Cummins Const. Corp., 1942, 180 Md. 486, 25 A.2d 439; Mosgaard v. Minneapolis Street Railway Co., 1924, 161 Minn. 318, 201 N.W. 545; Bolen v. Buller, 1943, 143 Neb. 237, 9 N.W.2d 204; McCadden v. West End Building and Loan Association, 126 N.J.L. 1, 17 A.2d 65, affirmed 1941, 127 N.J.L. 245, 21 A.2d 737.

The New York cases merit particular attention in interpreting the Longshoremen's and Harbor Workers' Compensation Act, since the federal statute is based upon the New York Workmen's Compensation Law, McK.Consol. Laws, c. 67. See Lawson v. Suwanee Fruit & Steamship Co., 1949, 336 U.S. 198 at page 205, 69 S.Ct. 503, at page 506, 93 L.Ed. 611. The rulings by the New York Courts, however, complicate the situation further, as the law at the time of the enactment of the federal statute had been interpreted to deny recovery in such situations, Ladd v. Foster Brothers Manufacturing Co., 3d Dept.

1923, 205 App.Div. 794, 200 N.Y.S. 258, and it was later held in a case dealing with the loss by enucleation of an already defective eye that the injured employee was entitled to a scheduled award. Riegle v. Fordon, 1948, 273 App.Div. 213, 76 N.Y.S.2d 523, affirmed 298 N.Y. 560, 81 N.E.2d 101.

The Ladd decision was based on the fact that the injury resulted in no loss of earning power:

"It is quite apparent that claimant's previous disability was, under the statute, equivalent to the loss of the eye and that no allowance could now be made for even the loss of any percentage of vision of the eye which at the time of the second injury had only light perception and according to the finding of the board had no useful vision from the standpoint of earning power. * * *" [205 App.Div. 794, 200 N.Y.S. 260.]

This test was rejected in subsequent cases, the most important of which is Riegle v. Fordon. The Riegle decision is squarely in favor of the position taken by the claimant, the majority of the court holding that an eye need not be "useful" in order to justify a scheduled award for its loss as a member:

"The statute makes no such distinction. Workmen's Compensation Law, § 15, subd. 3. If the word 'useful' is to be interpolated it should be done by the Legislature. Moreover, there are other considerations beside disfigurement. Doubtless most people would prefer to retain and not lose a natural eye even though the eye may be sightless. An artificial eye may well produce discomfort and irritations. And beyond this there usually remains with the average person the hope that the advancement of medical science may provide a way for restoration of sight. These considerations should not be ignored by judicial interpolation." [273 App.Div. 213, 76 N.Y.S.2d 524.]

The dissenting opinion points out that "The scheduled award which has been made is necessarily based upon the premise of a permanent partial disability which the undisputed evidence shows to be non-existent. The 'member' of claimant's body which was 'lost' was not his right eye as an organ of vision for it had been totally and permanently without power of vision for many years prior to the enucleation of its remaining structures. Its lens had been removed long before the accident which occasioned the removal of what remained. The Statute makes it clear to me that the scheduled loss of an eye contemplates a resulting loss of some use of it as an organ of vision [citing the same provision of the statute]. It would seem that only such a loss can incur a permanent partial disability. But, in any event, the scheduled loss is non-compensable unless it causes some permanent disability. * * *"

■ This Court would be following established principles of statutory construction were we simply to adopt the New York decisions as they existed at the time of the enactment of the federal law. Hoffman v. Palmer, 2 Cir., 1942, 129 F.2d 976; for an application of this principle to the Longshoremen's and Harbor Workers' Compensation Act, see, e. g., Case v. Pillsbury, 9 Cir., 1945, 148 F.2d 392; Bethlehem Shipbuilding Corp. v. Monahan, 1 Cir., 1931, 54 F.2d 349.

This would hold true notwithstanding the fact that the New York courts have since altered their interpretation of the New York Workmen's Compensation Law on this point. Interpretations subsequent to adoption, while perhaps entitled to "respectful consideration," Cain v. Bowlby, 10 Cir., 1940, 114 F.2d 519, certiorari denied 311 U.S. 710, 61 S.Ct. 319, 85 L.Ed. 462, are persuasive only, not binding, McCullough v. Smith, 8 Cir., 1917, 243 F. 823; Neil v. Gulf Oil Corp., D.C.E.D.Pa.1951, 101 F.Supp. 347, and indeed are often held to be of

little or no weight; Stutsman County v. Wallace, 1892, 142 U.S. 293, 312, 12 S. Ct. 227, 35 L.Ed. 1018; Anderson v. United States, 9 Cir., 1946, 157 F.2d 429. Thus, in interpreting another section of the Longshoremen's and Harbor Workers' Compensation Act, the Court of Appeals for the Ninth Circuit, finding that the New York courts had not at the time of the adoption of the federal statute "established a known and settled construction of the character contended for", went on to point out that "conceding that the later New York decisions have laid down such rule, they are inapposite for the purpose of determining historically the Congressional intent." Twin Harbor Stevedoring & Tug Co. v. Marshall, 9 Cir., 1939, 103 F.2d 513, 516. Cf. American Lumbermen's Mut. Casualty Co. v. Lowe, 2 Cir., 1934, 70 F.2d 616, 618. Consequently, even a complete about-face by the courts of the jurisdiction from which the statute has been adopted in no way requires the adopting jurisdiction to follow the new interpretation. Skaug v. Sheehy, 9 Cir., 1946, 157 F.2d 714.

■ Such a rule seems clearly desirable. For "legislative intent," vague as the concept often is, nevertheless forms a fundamental canon of statutory interpretation. There is a good deal of substance in the view that a legislature, in adopting a statute from another jurisdiction, is aware of, and by its acquiescence generally approves, the existing judicial construction of that statute. But this reasoning fails if applied to decisions subsequent to adoption, and, while the desire for uniformity and the respect for the ability of other tribunals in handling the same problem would seem to compel at least a respectful consideration of these later decisions, they are in no way more than persuasive, and indeed, by force of logic, may in their conflict with legislative intent as represented by "adoption" of the earlier decisions, be far from helpful.

■ But, like all such mechanical rules of statutory interpretation, so too the principle that the legislature adopts existing decisions when it adopts legislation is limited in its application. It would not, for example, bind this court where the fundamental purpose of the statute itself is subverted by an otherwise applicable decision of the other jurisdiction. See 82 C.J.S., Statutes, § 373(a), and cases there cited. Accordingly, while not without power to reach our own conclusion in any event, the state of the authorities in the various jurisdictions, and especially in New York, would seem to make it our duty in the case before us to lay aside what may be deemed at most a convenient guide to the ascertainment of legislative intent, and examine the precise problem on its own merits, in terms of the basic purposes of compensation law.

■ "In compensation, unlike tort, the only injuries compensated for are those which produce disability and thereby presumably affect earning power." Larson, Workmen's Compensation, § 2.40. Thus while there is no doubt that the loss of even a blind eye is an injury, it does not necessarily follow that this injury is within the ambit of the workmen's compensation law.

Industrially, claimant lost nothing by the second injury. The only industrial consequence of his injury lies in the effect his disfigurement might have on his ability to obtain and retain employment; and this is compensated for separately by a disfigurement award of $400 made to the claimant under § 908 (c) (20) of the statute. A disfigurement award, too, seems based exclusively upon a loss of industrial capacity, as the statute provides recovery only for facial or head disfigurement, which is most likely to cause an employer to hesitate to employ a worker and to cause other employees to object to the presence of the disfigured worker in their midst.

Appellant's point that the separate provisions for compensation for loss of a member and for loss of use of that member, § 908(c) (18) and (19), are intended to operate independently, is not well taken. Schedules are set up not to put a "price" on certain parts of the

human body, but to ameliorate an otherwise intolerable administrative burden by providing a certain and easily applied method of determining the effect on wage earning capacity of typical and classifiable injuries. Schedule awards must therefore be applied, not in a vacuum, but in terms of the wage-earning concept, which is the only principle that holds compensation law together as a consistent whole. Loss of earning capacity is the measure of compensation; and these parallel provisions of Subsections (18) and (19) simply take cognizance realistically of the fact that total loss of use has the same effect upon earning capacity as does loss of the member itself. Accordingly, provision is made for the same award in either case. Were these two subdivisions of the Section to be construed as appellant suggests, the courts would be compelled to sustain two successive awards, each in the amount of 140 weeks' compensation, where an industrial accident resulting in loss of vision was followed by another which caused enucleation of the same eye, despite the fact that, except for disfigurement, there has. been no loss of earning capacity arising out of the second industrial accident. See Justice v. Arkansas City Flour Mills Co., 1938, 147 Kan. 402, 76 P.2d 802. Indeed, the logic of appellant's position might require two awards where loss of vision and subsequent enucleation of a previously sound eye were the result of a single industrial accident.

 The "second injury" section of the Longshoremen's and Harbor Workers' Compensation Act resolves whatever doubt may remain. § 908(f) (2) provides that "in all other cases in which, following a previous disability, an employee receives an injury which is not covered by (1) of this subdivision, the employer shall provide compensation only for the disability caused by the subsequent injury." Paragraph (1) of Subdivision (f) deals with an injury which normally would result in permanent partial disability, but which because of the "previous disability" of the employee,

renders him permanently totally disabled, and the paragraph limits the employer's liability to the disability caused by the second injury, referring the employee to the "second injury" fund set up under the statute to provide additional compensation. "Previous disability" as used here has been interpreted by the Supreme Court as not being "a term of art", or meaning previous compensable injury, but rather, in light of the purpose of the second injury provision to prevent employer discrimination against handicapped workers, as referring to any previous injury. Lawson v. Suwanee Fruit & Steamship Co., 1949, 336 U.S. 198, 69 S.Ct. 503, 93 L.Ed. 611. The same logic is applicable to paragraph (2); and if, as we have seen, the claimant suffered no additional loss of industrial capacity as the result of the enucleation, this section clearly demonstrates the intention of Congress not to impose any liability upon the employer, regardless of whether the employee had been compensated previously for his earlier injury.

Order affirmed.