(No. 14267.—Reversed and remanded.)

THE PEOPLE ex rel. Edward Roos, Appellant, vs. HENRY KAUL et al. Appellees.

*Opinion filed February 22, 1922—Rehearing denied April 6, 1922.*

1. STATUTES—*what is the purpose of a proviso.* The purpose of a proviso to a statute is to except something from the enacting clause or to qualify or restrain the generality of what is affirmed in the body of the act, section or paragraph which precedes it, and it should be so construed.

2. MUNICIPAL CORPORATIONS—*when an ordinance prohibiting carrying on of particular business in certain locality is void.* An ordinance is void which prohibits one citizen from conducting a particular kind of business in a certain locality and permits another to engage in the same character of business in the same locality merely because the latter had established his business before the ordinance was passed; and it is immaterial that the ordinance does not expressly purport to limit its application to enterprises established after its passage, where it must be given such effect under the statute authorizing the ordinance.

3. SAME—*under commission form of government improvement ordinance must originate with the council.* In cities or villages under the commission form of government an improvement ordinance and all preliminary steps for a local improvement must originate with the council, and if the ordinance is passed by the board of local improvements all proceedings based upon it are void for want of jurisdiction, even though the village council is composed of the same persons who acted as a board of local improvements.

4. CONSTITUTIONAL LAW—*paragraph 82 of section 1 of article 5 of Cities and Villages act is void.* Paragraph 82 of section 1 of article 5 of the Cities and Villages act, empowering municipalities to control the location of certain businesses within their corporate limits, is void because it is not uniform in its operation but through its proviso requires that any ordinance limiting the right to locate a particular business in a certain locality shall not be applied to enterprises established prior to the passage of the ordinance.

5. SAME—*when invalidity of proviso renders entire section void.*
The invalidity of a proviso renders invalid the entire section or
paragraph to which it is attached, where it cannot be assumed
the legislature would have passed the section or paragraph without the proviso.

APPEAL from the Superior Court of Cook county; the
Hon. JACOB H. HOPKINS, Judge, presiding.

FYFFE & CLARKE, and COOKE, SULLIVAN & RICKS,
(GEORGE A. COOKE, of counsel,) for appellant.

LITSINGER, HEALY & REID, (DANIEL M. HEALY, of
counsel,) for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

The People, on the relation of Edward Roos, filed in
the superior court of Cook county a petition for a writ of
*mandamus* commanding the mayor, commissioners, clerk
and commissioner of buildings of the village of Forest Park
to issue to the relator a permit for the erection of a factory
in the village. A trial was had before the court and a
judgment was entered denying the writ and dismissing the
petition. The relator appealed. The appeal was allowed
direct to this court, the trial court certifying that the validity
of a municipal ordinance is involved. The appellant also
attacks the validity of a statute.

The petition alleges relator resides in Cook county; that
he proposes to erect in the village of Forest Park a factory
for the manufacture of kitchen cabinets; that the village
is under the commission form of government; that November 26, 1920, relator (hereafter called appellant) applied for a permit to build his factory, which was refused.
The petition describes the proposed location of the factory.
There is no dispute about appellant having complied with
all the requirements of the ordinances as to the character

and plans of the proposed building, but the officers refused to grant a permit. Appellees answered the petition, alleging the passage of an ordinance March 22, 1920, prohibiting the location of the proposed factory within 1000 feet of any church or public school in the village, and the answer alleged the proposed location was within 1000 feet of a church and within 1000 feet of public schools in the village. The answer further alleged as another ground for refusing to grant the permit, that proceedings were pending before the board of local improvements of the village to extend Thomas avenue from the north line of Harrison street to the Illinois Central railroad by condemning a strip 66 feet wide through the land proposed to be used as a factory site.

The ordinance prescribing the limits within which certain mentioned enterprises, including factories, cannot be located was passed by the village March 22, 1920, pursuant to paragraph 82 of section 1 of article 5 of the Cities and Villages act, as amended in 1919. Said paragraph is as follows:

"*Eighty-second*—To control the location and regulate the use and construction of breweries, distilleries, livery, boarding or sale stables, wagon repair shops, blacksmith shops, foundries, machine shops, public garages, private garages and stables designed for the use of five or more vehicles, hangars, laundries, bathing beaches, brick yards, planing mills, flour mills, box factories, lead factories, steel factories, iron factories, ice plants, either for the manufacturing or storing of ice, factories or other manufacturing establishments using machinery or emitting offensive or noxious fumes, odors, or noises, and storage warehouses, within the limits of the city or village: *Provided,* that this clause shall not be construed to require the removal of any of the above enumerated buildings from any location which they may lawfully occupy at the time of the passage of any ordinance hereunder."

The ordinance is entitled, "An ordinance controlling the location and regulating the use and construction of,"— enumerating the same enterprises mentioned in the statute. Section 1 of the ordinance is as follows: "It shall be unlawful for any person, firm or corporation to keep, conduct, operate, locate, build or construct any brewery, distillery, livery, boarding or sale stable, wagon repair shop, blacksmith shop, foundry, machine shop, public garage, private garage or stable designed for the use of five or more vehicles, hangar, laundry, brick yard, planing mill, flour mill, box factory, lead factory, steel factory, iron factory, ice plant, either for the manufacture or storing of ice, factory or other manufacturing establishment using machinery, emitting offensive or noxious fumes, odors or noises, or storage warehouse, within the limits of the village of Forest Park within 1000 feet of any building used as and for a hospital, church or public or parochial school or the grounds thereof." The penalty for the violation of the ordinance is not less than $25 nor more than $100 for the first and each subsequent offense, and every day the enterprise is being constructed or maintained is a separate violation of the ordinance.

Forest Park is about two miles west of the western limits of the city of Chicago and joins the west boundary of Oak Park, from which it is separated by Harlem avenue. It is bounded on the north by the village of River Forest, on the west by the Desplaines river and on the south by Sixteenth street, and has a population of 10,000 or 11,000. The Baltimore and Ohio Chicago Terminal railroad, the Chicago and Great Western railroad, the Illinois Central railroad and the "Soo" line run through the village east and west near its center, from north to south. Adjoining the right of way of the steam railroads, running substantially parallel with them, is the Elgin, Aurora and Chicago Electric railway, which has a system of double tracks and does a freight and passenger business. All these railroad tracks

are on the surface of the ground. South of the railroad tracks and west of Desplaines avenue none of the territory is platted into lots and blocks and is occupied chiefly by cemeteries. Only a small part of the territory north of the railroad tracks and west of Desplaines avenue appears to be subdivided, and the unsubdivided territory is occupied by an old folks home and for cemetery purposes. Desplaines avenue extends in a northeasterly and southwesterly direction from the south limits of the village to Randolph street, which is within a few blocks of the northern limits of the village. It practically constitutes the west boundary of the village at present, for all the territory that is west of Desplaines avenue and south of the railroad tracks, and most of it north of the tracks, is not subdivided. There is a tract of land about three-fifths of a mile in length, extending from Harlem avenue,—the east boundary of the village,—west to Desplaines avenue, having for its north boundary the railroad rights of way and tracks and its south boundary Harrison street,—an east and west street,— which tract has never been subdivided. It is approximately 200 feet wide at its east end and 600 feet wide at its west end, where it adjoins Desplaines avenue. It is intersected by three north and south streets,—Circle avenue, Hannah avenue and Beloit avenue. The proposed factory site is that part of said unsubdivided tract bounded on the east by Hannah avenue, on the west by Beloit avenue and on the south by Harrison street. It covers a space approximately equal to a city block, being about 600 feet long and 500 feet deep. Across Hannah avenue, east of it, is located the factory of the Ed Roos Company, which is substantially of the same character as the proposed factory. It has been in operation since 1918, and its property extends from Hannah avenue east to Circle avenue and south from the railroad rights of way to Harrison street. On account of the railroad facilities this unsubdivided tract lying immediately south of the railroad rights of way is very de-

sirable for sites for industrial enterprises. The Baltimore and Ohio Chicago Terminal Transfer Company is a belt line connecting with every railroad going in and out of Chicago and has switch tracks along its entire line. The proof was that the value of the proposed site for industrial purposes is $132,000, that its value for residential purposes in its unsubdivided condition is $20,000, and that it would cost approximately $20,000 to subdivide and plat it.

It is difficult to describe in words the territory, streets and railroads so as to visualize the situation to one reading the description without a map or plat before him, and we do not think it practicable to incorporate a plat in this opinion, but from reading the evidence with the plat before us the conclusion seems warranted· that there is no site available to appellant which is suitable for the proposed factory outside the restricted area. There is some property south of Harvard street, which is two blocks south of Harrison street, not within the restricted limits, and four small factories are located there, but the property in that part of the village is otherwise occupied or unsuited to the industry appellant proposes to establish. There appears to be no suitable and available location north of the railroads. Railroad facilities are an important and necessary element to a suitable location. Proof was offered by appellant that in the proposed new factory ball-bearing and practically noiseless machinery would be used; that the best appliances known for the elimination of smoke would be installed; that shavings and wood from the manufacture of the product would be used as fuel; that a modern blower-system combining oxygen with the fuel would be used, and the power used would be electricity.

Several serious questions affecting the validity of the ordinance are presented and argued in the briefs, but in the view we take of the case it will only be necessary to refer to one, and that is, that the proviso to paragraph 82 of section 1 of article 5 of the Cities and Villages act

renders the entire paragraph invalid. That paragraph as amended in 1919 purports to authorize municipalities to control the location of the businesses enumerated. Appellant contends it is void because it discriminates between factories previously established and those established after the passage of the act. It is argued the paragraph purports to authorize a continuance of the enterprises enumerated, established before the passage of an ordinance restricting the limits within which other like industries may be located. Appellees do not deny that if such is the effect of the paragraph an ordinance passed under it would be discriminatory, unreasonable and tend to create a monopoly, but they contend the paragraph does not authorize a continuance of a prohibited business or enterprise but does authorize permitting the building in which it was conducted to remain in its location. It will be seen by reference to the paragraph that with the exception of bathing beaches all of the enumerated enterprises are of a character which requires some kind of a building, and while the paragraph reads that none of the "above enumerated buildings" shall be required to be removed from any location which they lawfully occupied at the time the act was passed, we are of opinion, considering the entire paragraph, its reasonable construction is that it was not intended to affect any enterprise or business of the character mentioned which had been located and was being carried on before the act was passed. The legislature would not be authorized to confer power on a municipality to require the removal of all buildings in which the enumerated enterprises were established and conducted, and it seems clear that by the use of the word "buildings" in the proviso it was intended to exempt from the effect of the statute the businesses or enterprises which had been established before the passage of the statute. The only purpose of the proviso was to except something from the enacting clause or to qualify or to restrain its generality. (*City of Chicago* v. *Phœnix Ins. Co.* 126 Ill. 276.) A pro-

viso is to be construed to qualify what is affirmed in the body of the act, section or paragraph which precedes it. (*People* v. *Fidelity and Casualty Co.* 153 Ill. 25; *Public Utilities Com.* v. *Early,* 285 id. 469.) The portion of the paragraph preceding the proviso does not purport to authorize the municipality to require the removal of buildings. It only purports to authorize cities and villages to control the location and regulate the use and construction of the enumerated enterprises, and it would seem the only purpose of the proviso was to exempt from its effect enterprises of the character named which were already in operation. Apparently the village authorities have not attempted to interfere with the operation of factories already established and in operation within the restricted limits,— some three or four in number, as we understand the evidence. Appellant himself owns a factory immediately east of the location of the proposed factory, which employs about one hundred men and is doing the same character of work it is intended to do in the proposed new factory. Ordinances with provisions substantially similar to those in paragraph 82, which were not intended to apply to a business or enterprise already established but to prohibit the establishment of other similar enterprises in the same territory, have been held invalid. (*Tugman* v. *City of Chicago,* 78 Ill. 405; *City of Cairo* v. *Feuchter,* 159 id. 155; *City of Chicago* v. *Rumpff,* 45 id. 90; *Mayor* v. *Thorne,* 7 Paige, 261.) In *Meyers* v. *Baker,* 120 Ill. 567, the court considered a proviso to a statute which it was contended discriminated between businesses already established and those that might thereafter attempt to become established. The court cited with approval *Tugman* v. *City of Chicago, supra,* and said the same rule which would control in the construction of an ordinance would apply to an act of the legislature. The cases above referred to, and many others which might be cited, hold an ordinance which prohibits one citizen from conducting a particular kind of business

in a certain locality and permits another to engage in the same character of business in the same locality is void.

If we are correct in the construction of the proviso, it would follow that paragraph 82 makes an act done by one penal but imposes no penalty for the same act done under like circumstances by another, and the statute is therefore not uniform in its operation, is unreasonable and tends to create a monopoly, which this court said in *Meyers* v. *Baker, supra,* the law will not tolerate. The proviso being void renders the whole paragraph void, because it cannot be assumed the legislature would have passed the paragraph without the proviso. (*Mathews* v. *People,* 202 Ill. 389; *Connolly* v. *Union Sewer Pipe Co.* 184 U. S. 540; Lewis' Sutherland on Stat. Const. sec. 306.) It is immaterial that the ordinance does not purport to limit its application to enterprises established after its passage. The ordinance was enacted pursuant to power expressly granted by the statute, and the village authorities could only act within the terms of the power granted by the legislature.

After appellant had applied for a permit to erect his factory, the board of local improvements of the village of Forest Park, on December 20, 1920, adopted a resolution that a local improvement be made by extending Thomas avenue from Harrison street north to the south line of the rights of way of the railroads,—a distance of one block. The proposed extension of Thomas avenue would pass through appellant's property, only, and would divide the proposed factory site in the middle. The improvement was originated by the board of local improvements of the village, and a public hearing was called by said board at which the estimate of the cost of the improvement submitted by the board was approved and an ordinance directed to be prepared by the board and submitted to the council for passage. The public hearing was held January 3, 1921, and on the same date an ordinance prepared by the board was introduced in the council and laid over, under the rules,

until its next meeting, which was held January 17, at which time the ordinance was passed. It was stipulated on the trial that condemnation proceedings were then pending in the county court to condemn the strip of land through appellant's property for the extension of Thomas avenue, and it is contended by the appellees that the writ of *mandamus* should be denied for that reason. The village of Forest Park is under the commission form of government. By act of the legislature in 1917 the board of local improvements in cities and villages under the commission form of government was abolished and the powers theretofore exercised by such board were directed to be exercised by the council, and appellant contends the entire improvement proceeding was void and its validity subject to collateral attack. In *City of Chrisman* v. *Cusick,* 290 Ill. 297, and *City of Chrisman* v. *Cincinnati, Indianapolis and Western Railroad Co.* 290 id. 348, this court held that after boards of local improvements were abolished, in 1917, preliminary steps and an improvement ordinance originated by a board of local improvements instead of the council were void. We have held that where the ordinance is void all proceedings based upon it are void, and will be so treated whether attacked directly or collaterally, for want of jurisdiction. *Culver* v. *People,* 161 Ill. 89; *People* v. *Hurford,* 167 id. 226; *City of Chicago* v. *Nodeck,* 202 id. 257; *Village of Lovington* v. *Gregory,* 287 id. 169; *City of Dixon* v. *Atkins,* 298 id. 494.

Appellees contend that while the record shows the improvement, preliminary steps and ordinances originated with the board of local improvements, it appears from the identity of the names that the persons acting as the board of local improvements were in fact the village council, and that all that was done was performed by the persons designated by law to do the work, and that characterizing themselves as a board of local improvements was a mere irregularity, which did not render the proceedings void.

The record shows all the meetings and proceedings were of the board of local improvements, and they were certified by the village clerk as proceedings of the board except the final act of passing the ordinance. The resolution that the improvement be made the record shows was adopted without any yea and nay vote at a meeting of the board of local improvements. The estimate of the cost of the improvement, stating that the cost, omitting the land to be taken, would be nothing, was submitted to the board at the same time, and was signed by H. Kaul as president of the board of local improvements. It seems clear from the record that the persons acting considered themselves the board of local improvements,—not the village council,—and their proceedings were such as a board of local improvements was authorized to pursue when such proceedings were required to be conducted by such board. Their proceedings while acting in an unauthorized capacity cannot be held valid because they might have performed the same acts if they had been acting in the capacity authorized by law. Because the same men had authority to originate the improvement and carry on the proceedings for making it as the council of the village did not authorize them to so act in an unauthorized capacity. No one was bound to take notice of the public hearing called by a board of local improvements or any other acts of such board, for no such board existed. This conclusion is supported by *Marshall* v. *Silliman,* 61 Ill. 218, *Bouton* v. *McDonough County,* 84 id. 384, and *Marsh* v. *People,* 226 id. 464.

The local improvement ordinance, and all proceedings based thereon, are void and afford no reason for denying the writ.

The judgment of the superior court is reversed and the cause remanded, with directions to award the writ.

*Reversed and remanded, with directions.*