(No. 20270.—

THE CRERAR CLINCH COAL COMPANY *et al.* Appellants, *vs.* THE CITY OF CHICAGO *et al.* Appellees.

*Opinion filed October 25, 1930—Rehearing denied Dec. 10, 1930.*

Butz, VonAmmon & Marx, (Frederick E. VonAmmon, Frederick Z. Marx, and Robert J. Colson, of counsel,) for appellants.

Samuel A. Ettelson, Corporation Counsel, (Frederick A. Bangs, Leon Hornstein, and Martin H. Foss, of counsel,) for appellees.

Mr. Justice Stone delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Cook county dismissing the bill of appellants, filed on their behalf and on behalf of others similarly situated, to enjoin the city of Chicago, its mayor and superintendent of police from enforcing an ordinance of that city requiring licenses for private garages. The bill attacks the ordinance on two grounds: (1) That the State has not delegated to the cities the power to control or regulate the use and construction of or to license private garages as defined in the ordinance here involved, but the statute conferring power on the city to regulate garages has been uniformly construed to apply only to the garage business; and (2) even though such power existed, the ordinance here attacked is void as unreasonable and discriminatory.

The ordinance involved here is a part of article 4 of the municipal code of the city of Chicago. Section 260 defines private garages as follows: "The words 'private garage' as used in this article shall be held to mean, and are hereby defined as meaning, any building, structure, premises, enclosure or other place (except a public thoroughfare) within the city where automobiles, autocars or any similar self-propelled vehicles owned and operated by and for the private use of the owner or owners, lessee, or lessees of such building, structure, premises, enclosure or place, or lessee of a portion of the premises on which such

garage is located, are stored or parked in a condition ready for use." Section 261 is as follows: "No person, firm or corporation shall manage, conduct, operate or carry on a private garage where said private garage is designed for the use of five or more automobiles, autocars or any similar self-propelled vehicles without first having obtained a license therefor. Any building, structure, premises or place used for a private garage having a gross interior floor area sufficient for five or more automobiles, autocars or any similar self-propelled vehicles, allowing two hundred square feet of such floor area for each automobile, autocar or any similar self-propelled vehicle, shall be deemed within the provisions of this section, notwithstanding that said interior floor area is divided and separated into compartments or stalls by walls or partitions and also notwithstanding that each compartment or stall may have a separate entrance." Section 262 provides for the form of the application for license, which is to contain information as to location of the private garages, the structure of the buildings, size, and numerous other facts therein required, and also provides: "Every such application shall be approved by the superintendent of police, the commissioner of buildings and the chief of fire prevention and public safety before a license shall be issued." Section 263 provides a graded license fee for such private garages, based on the number of cars of five or more kept in such buildings. This section also provides: "The capacity of such building, structure, premises, enclosure or other place shall be figured on the gross interior floor area by allowing two hundred square feet of such floor area for each automobile, autocar or any similar self-propelled vehicle." By section 264 it is provided that all licenses shall expire on the 31st of December following the date of issuance. Section 265 provides that no private garage designed for the use of five or more automobiles or similar self-propelled vehicles shall be constructed within two hundred feet of a hospital, church or school, and may not be

constructed in any block in which two-thirds of the buildings are used for residence purposes without consent of the owners of a majority of the frontage in that block. Section 266 provides for inspection of these garages from time to time by the chief of fire prevention, and section 267 provides a penalty for failure to observe the provisions of the ordinance.

We will consider first the question whether the statute authorizes the regulation of private garages. Clause 82 of section 1 of article 5 of the Cities and Villages act was amended in 1919 and the same was carried through in the amendment of 1921, and in enumerating the powers of the city council clause 82 as so amended reads as follows: "To control the location and regulate the use and construction of breweries, distilleries, livery, boarding or sales stables, wagon repair shops, blacksmith shops, foundries, machine shops, public garages, private garages and stables designed for the use of five or more vehicles, hangars, laundries, bathing beaches, brickyards, planing mills, flour mills, box factories, lead factories, steel factories, iron factories, ice plants, either for the manufacturing or storing of ice, factories, or other manufacturing establishments using machinery or emitting offensive or noxious fumes, odors or noises, and storage warehouses, within the limits of the city or village: *Provided,* that this clause shall not be construed to require the removal of any of the above enumerated buildings from any location which they may lawfully occupy at the time of the passage of any ordinance hereunder." These amendments were declared unconstitutional in *People* v. *Kaul,* 302 Ill. 317, and in *Rippinger* v. *Niederst,* 317 id. 264, and it was declared that clause 82 as amended in 1911 was left in force. That clause as then amended reads as follows: "To direct the location and regulate the use and construction of breweries, distilleries, livery, boarding or sales stables, blacksmith shops, foundries, machine shops, garages, laundries and bathing beaches,

within the limits of the city or village." Prior to 1911 the word "garages" was not contained in this clause.

Appellants argue that the intention of the legislature was to grant power to regulate certain businesses or occupations, to which by the amendment of 1911 was added "garages." Cities are creatures of the legislature. It has many times been said by this court that they have no inherent powers and derive all powers possessed by them from the statutes granting such power, and that such statutes are to be strictly construed. Any fair or reasonable doubt as to the existence of the power must be resolved against the municipality. (*Barnard & Miller* v. *City of Chicago,* 316 Ill. 519; *Aberdeen-Franklin Coal Co.* v. *City of Chicago,* 315 id. 99; *Arms* v. *City of Chicago,* 314 id. 316.) Unless, therefore, it can be seen that the legislature in the amendment of 1911 intended to confer power to control and regulate private garages as well as the garage business, we must hold against the power of the city to enact the ordinance in question here.

Counsel argue that the great increase in the use of automobiles has given rise to a situation involving the public safety and welfare which justifies this court in holding that the regulation of private garages is included in the power conferred by the amendment of 1911. It requires no demonstration to understand that in determining the intention of the legislature this court cannot ascribe to it an understanding of what the future might bring when such is not indicated in the act or apparent to anyone else. Unless by the language of a given statute it can be seen that it contemplated a given future development this court can only ascribe to the legislature the intention to meet conditions as they existed at the time of the passage of the act. Courts should be liberal in construing the intention of the legislature as to the adaptation of its statutes to future use where such may reasonably be justified, but it is quite clear that the legislature in 1911 could not have had in mind that the use of automobiles would or might so increase as

to require the regulation of private garages in the interest of the public welfare. The intention of the legislature at the time it adopted the 1911 amendment has been construed by this court in at least three cases. In *People* v. *City of Chicago,* 261 Ill. 16, clause 82 as amended in 1911 is construed as regulating various kinds of business therein named. It is there observed that a reading of various clauses of section 1 of article 5 of that act refers to the regulation of the businesses enumerated, and that they are of a character either necessarily detrimental to the comfort and well-being of persons who are required to reside near them, or may become so when improperly and carelessly carried on. It was there held that retail stores, other than grocery stores and meat markets, were not included. In *People* v. *Ericsson,* 263 Ill. 368, clause 82 as amended in 1911 was again considered. In that case an ordinance, in language almost identical with the one before us, declared it to be unlawful to locate, maintain or conduct a garage within two hundred feet of any hospital, church or school, or in any block in which two-thirds of the buildings on both sides of the street are used exclusively for residences, without securing written consent of a majority of the property owners. This ordinance was attacked on the ground that the city had no power to pass it and that it was void for unreasonableness. The ordinance was construed a regulation of public garages, and clause 82 was construed as authority to the city to regulate the garage business. In *People* v. *Village of Oak Park,* 266 Ill. 365, clause 82 was again considered, and the language relating to garages was construed as regulating the garage business, and an ordinance passed thereunder was held valid. That the legislature intended clause 82 as amended in 1911 to apply to various classes of business, including garage business, is evidenced by the fact that the amendments of 1919 and 1921, declared invalid for reasons set out in the case of *People* v. *Kaul, supra,* provided for the regulation and control of "public garages, private

garages and stables designed for the use of five or more vehicles," etc. In no case called to our attention has it been held that under clause 82 as amended in 1911 the language "breweries, distilleries, livery, boarding or sales stables, blacksmith shops, foundries, machine shops and laundries" related to anything but such businesses, and it seems clear that if the legislature had intended by the insertion of the word "garages" in the amendment of 1911 to have it apply to private garages though other provisions of the clause applied only to businesses, it would have plainly so stated. We are of the opinion that it cannot be said that the ordinance in question is authorized by the statute.

Counsel argue that it is in the interest of public safety that this ordinance be sustained, and that this court, under an act entitled, "An act in relation to judicial notice," adopted in 1929, (Cahill's Stat. 1929, p. 1310,) takes judicial notice of other ordinances of the city of Chicago contained in the municipal code. Without deciding whether this court, under the act referred to, is required to take judicial notice of ordinances when the record does not disclose that the court below took judicial notice of such ordinances, it seems apparent that if fire prevention or building ordinances or ordinances affecting gas storage are applicable, that fact does not change the issue before us in this case, which is, whether under clause 82 appellees are given power to regulate private garages by the ordinance under attack. We are of the opinion that the city does not have such power. Whether the increase of the use of motor vehicles has brought about a situation inimical to the public welfare unless regulated is a matter that might well be addressed to the legislature. This court cannot legislate. These views dispose of this case.

The judgment of the circuit court is reversed and the cause remanded, with directions to grant the injunction as prayed. *Reversed and remanded, with directions.*