## BOARD OF COUNTY COM'RS. OF BIG HORN COUNTY, ET AL. v. BREWER

(No. 1966; November 24, 1936; 62 Pac. (2d) 685)

For the plaintiffs in error, the cause was submitted on the brief of *Thos. M. Hyde* and *C. A. Zaring* of Basin.

For the defendant in error, the cause was submitted on the brief of *Chas. L. Brome* of Basin.

424

*Thomas M. Hyde* and *C. A. Zaring* in reply.

RINER, Justice.

This case is here by proceedings in error to review a judgment of the district court of Big Horn County against the plaintiffs in error, the Board of County Commissioners of Big Horn County, Wyoming, and Big Horn County, Wyoming, and in favor of Madeline Brewer, the defendant in error.

The trial of the action below was had before the court without a jury and the judgment aforesaid was rendered March 1, 1935. A motion for a new trial was filed by the unsuccessful parties, which was overruled May 23rd following. Sundry extension orders were made from time to time by the presiding judge for the preparation of a bill of exceptions to be filed in the cause. A bill of exceptions was not, however, presented to the judge for allowance until the 7th day of November, 1935.

The defendant in error has asked us to dismiss the cause in this court by her motion filed for that purpose. She assigns as reasons therefor that the bill of exceptions was not presented to the judge who tried the case within 120 days from the time of the entry of the order overruling the motion for a new trial. The plaintiffs in error resist the motion on two grounds. They say first that it was through no fault of theirs—as they undertake to show by affidavit—but through the inability of the court reporter to supply the transcript that the bill was not presented within the period mentioned.

Section 89-4701 provides.

"The party objecting to the decision must except at the time the decision is made, and shall have sixty days from and after the date of the judgment, decree or final order in the case within which to reduce the exception to writing and present the same to the court or judge for allowance. If within said sixty days the party excepting shall make it satisfactorily to appear to the court or judge authorized to allow the bill of exceptions that the party will be unavoidably prevented from presenting the bill within said time, the court or judge by written order may extend said time, but not to exceed sixty additional days."

The significant language in the statute just quoted is the positive prohibition contained in the words "but not to exceed sixty additional days." This court has

repeatedly held that an extension of time for presenting a bill of exceptions cannot be made for more than 120 days from the date of the order denying a motion for a new trial. See Jones v. Parker, 38 Wyo. 26, 264 Pac. 97; White v. State, 41 Wyo. 256, 284 Pac. 764; Burnett v. Giblin, et al., 38 Wyo. 421, 267 Pac. 689. That the excuse suggested above for not presenting the bill of exceptions in time will not relieve from the imperative demand of the statute see Chatterton v. Bonelli, 27 Wyo. 301, 196 Pac. 316. Under such circumstances a bill of exceptions will be stricken, and we may not regard it as in the record. Jones v. Parker, supra.

Plaintiffs in error also say that questions arise in this case upon the record proper before us which should be decided as within the assignments of error, and hence though the bill of exceptions may not be entitled to consideration, the cause should not be dismissed within the rule announced in the case of In re Austin's Estate, 35 Wyo. 176, 246 Pac. 459. It was there held that a writ of error would not be dismissed for want of a bill of exceptions or a motion for a new trial where questions of law determinable on the facts shown by the record are involved. We are inclined to think that plaintiffs in error are right in this contention and that this rule is applicable here. It is evident that one of the matters argued in the briefs of the parties is that the statute upon which the action below was based cannot be construed as applicable to the facts pleaded, i. e., that the amended petition of the plaintiff below, defendant in error here, fails to state a cause of action. The motion to dismiss must accordingly be denied.

This pleading of the plaintiff alleges in substance, in paragraphs I and II, that on July 17, 1925, the county treasurer of Big Horn County at public tax sale sold to the county certain real estate, the descrip-

tion of which is given, for taxes claimed to have been levied against said lands for the year 1924; that on November 2, 1927, the county commissioners of Big Horn County officially sold said lands to the plaintiff for the sum of $2092.38, then paid to the treasurer of said county by the plaintiff, and thereupon issued to her therefor a deed, which is set out verbatim. This instrument recites the disposition to Madeline Brewer of the property aforesaid, at private sale, by the said board of county commissioners, and that said board has "sold, transferred and conveyed, and by these presents does hereby sell, transfer and convey" to her the described real estate.

Plaintiff's amended petition also alleges in paragraphs III and IV that the stated consideration for the deed thus paid by the plaintiff to the county treasurer of Big Horn County was the amount of the claimed taxes against said land, for which it was sold on July 17, 1925, plus other subsequent taxes accruing and claimed to have accrued against said land; that no tax deed was ever issued by the county treasurer to Big Horn County in connection with said tax sale; that the sale of the land aforesaid by the county treasurer to Big Horn County and the sale thereof by the board of county commissioners of said county to the plaintiff were "without authority of law and were irregular and void in that Big Horn County, Wyoming, had no title in and to said lands and no levy of tax was made against said land and real estate for the year 1924, for which said real estate was purported to have been sold on July 17, 1925; and that said Commissioners' Tax Deed hereinabove set forth so as aforesaid made, executed and delivered to the plaintiff, was and is void and of no effect, and conveyed no title whatsoever to the plaintiff."

The concluding fifth paragraph of said pleading states that plaintiff, relying upon said deed, went into

possession of said land and was thereafter ejected therefrom by the owner of it, in an action at law in the district court of Big Horn County, and that there has been a total failure of consideration to the "defendant" (plaintiff) for the money paid as aforesaid; and that a verified claim for said sum, together with interest from November 2, 1927, until paid, has been presented to the defendants, who refused to pay the same. Plaintiff prayed for judgment in the sum thus expended, with interest at the rate of eight per cent per annum from November 2, 1927.

This amended petition was demurred to by the defendants as not stating facts sufficient to constitute a cause of action against them, or either of them, but the demurrer was by the court overruled.

Defendants then filed an amended answer in which they admitted paragraphs I and II of plaintiff's amended petition and denied all the remaining allegations contained in that pleading. They also set up a second and third defense, which we need not at this time consider. Plaintiff interposed a general demurrer to these defenses and it was sustained. The filing of this answer did not, of course, waive the defect that the amended petition failed to state a cause of action. Spaugh v. Peterson, 34 Wyo. 374, 244 Pac. 224; Grover Irrigation Co. v. Lovella Ditch Co., 21 Wyo. 204, 131 Pac. 43.

It will be observed that this is an action by a purchaser to recover from the county the amount paid to it by her for real property previously bid in by the county treasurer as county property, at a tax sale, where the title to said property has failed in consequence of the invalidity of the tax title thus obtained by the county. The deed of conveyance from the county to Madeline Brewer does not contain any suggestion of warranty of title by the board of county

commissioners as grantor. As a matter of fact, the operative words of the instrument hereinbefore quoted rather expressly exclude the idea of any such warranty. There is no provision in our statutes which has been drawn to our attention that the board of county commissioners of a county shall in any way warrant the title it undertakes to convey pursuant to its sale of land acquired by the county under the provisions of Section 115-2340 W. R. S., 1931, or its predecessor (Compiled Statutes 1920, Sec. 2894).

61 C. J. 1463, 1464, says that: "In the absence of statutory provision for relief, the holder of an invalid tax title has no remedy against the body for whose benefit the sale was made nor against the official making the sale." The note in 77 A. L. R. 824, summing up the effect of decisions in this country relative to the same matter remarks:

"There is little dissent from the rule that the holder of a tax certificate or deed issued at an invalid tax sale cannot, in the absence of statute, obtain reimbursement from the taxing authorities. The courts assign a number of reasons in support of the rule. It is said that the doctrine of caveat emptor applies with full force to tax sales, that payment made by the purchaser is voluntary, that he takes without warranty as upon conveyance by mere quitclaim, that he purchases a mere chance with the expectation of large profits, that the tax records are open to his inspection to be disregarded at his peril, and, lastly, that the rule is necessary to avoid uncertainty in public finances."

The same rule has been with propriety applied to purchases from a county of property the title to which has been obtained by the municipality at tax sale. See Shelton v. Klickitat County, 152 Wash. 193, 277 Pac. 839; Minnesota Loan & Invest. Co. v. Beadle County, 18 S. D. 431, 101 N. W. 29; Parrott v. Abernathy, County Treasurer, et al., 58 S. D. 603, 237 N. W. 900; Wilson v. Salt Lake County Corporation, 57 Utah 274,

194 Pac. 125. Our attention has not been directed to any cases which suggest a contrary rule.

It is urged, however, that Section 115-2338 W. R. S. 1931, which was Compiled Statutes of Wyoming 1920, Section 2892, authorizes by statutory enactment the relief the plaintiff seeks and entitles her to bring and succeed in the action she commenced. The statute reads:

"When, by mistake or unlawful act of the treasurer, land has been sold on which no tax was due at the time, or whenever land is sold unlawfully in consequence of any other mistake or irregularity rendering the same void, the county shall hold the purchaser harmless by paying him the amount of the principal, interest and cost to which he would have been entitled had the land been rightfully sold, and the treasurer and his sureties will be liable to the county for the amount; provided, that the treasurer or his sureties shall be liable only for his own or his deputies' acts."

This law appears in the statutes of Wyoming Territory as Section 55 of the Revenue Act approved December 10, 1869 (Laws of Wyoming 1869, page 361). It was apparently borrowed verbatim from the statutes of Dakota Territory, as it there appears as Section 58 of the Revenue Act of that territory, approved May 15, 1862 (General Laws Dakota 1862, page 435). The sources of this Dakota law and its subsequent changes are to some extent indicated in the opinion of Mr. Chief Justice Fuller in Stutsman County v. Wallace, 142 U. S. 293, 12 Sup. Ct. 227, 35 L. Ed. 1018.

The language of the Wyoming territorial act has been carried forward through the various compilations and revisions of the laws for Wyoming Territory and State without change. At the time it was enacted, and for many years thereafter, there can be no doubt that it applied only to purchasers at sales of property for delinquent taxes. The law authorizing the county

to take title to property when there were no bidders and then resell the same did not come into existence until Sections 1-3 of Chapter 66 Laws of Wyoming, 1899, were approved February 20th of that year, the same subsequently appearing as Sections 1900-1902 Revised Statutes of Wyoming, 1899.

While it is true in the construction of statutes that "if the language is broad enough to include things not yet known, but which may afterwards come into being, then they, too, are included," (Lion Coal Co. v. Contas, 42 Wyo. 94, 291 Pac. 314; Pellish Bros. v. Cooper, 47 Wyo. 480, 38 Pac. (2d) 607) "but the terms used must be comprehensive enough to include them." Franklin & P. Ry. Co. v. Shoemaker's Committee, 156 Va. 619, 159 S. E. 100. To the same effect are Dupont v. Moore, 86 N. H. 254, 166 Atl. 417; Crerar Clinch Coal Co. v. City of Chicago, 341 Ill. 471, 173 N. E. 484. In illustration of the views expressed by the courts upon the question whether particular refund statutes authorize a recovery from the county when a resale was had of property bid in by the county and then the title failed through a defect in the tax proceedings, several cases may be cited. Pertinent decisions of this character do not seem to be very numerous.

Where the plaintiff purchased a tax certificate from the county after the county treasurer had sold certain land therein described at tax sale to the county, and said plaintiff had thereafter paid the taxes on said property, in Minnesota Loan & Investment Co. v. Beadle County, supra, it was held that such purchaser could not recover the amount thus paid to the municipality on account of the tax certificate being void because of an alleged error in the description of the property. The law invoked to secure the refund was that part of Section 112, Chapter 14, page 66, Laws of South Dakota, 1891, which reads:

"When by mistake or wrongful act of the treasurer,

land has been sold on which no tax was due at the time, the county is to save the purchaser harmless by paying him the amount of principal and interest at the rate of twelve per cent. per annum, from the date of sale, and the treasurer and his sureties shall be liable for the amount to the county on his bond, or the purchaser may recover the same directly from the treasurer."

The court remarks:

"In the case at bar there was no mistake or wrongful act on the part of the treasurer for which the county could be held liable under the provisions of that section. In American Investment Co. v. Beadle County, 5 S. D. 410, 59 N. W. 212, this court, in a case brought to recover back money paid at a tax sale, uses the following language: 'The rule of caveat emptor applies with all its force to a purchaser at such sale. Knowing that tax titles are to some extent uncertain, and that they usually depend on numerous contingencies, he engages his means in the speculation and assumes the liability of having his title prove to be worthless, and in that event he cannot, in the absence of a statute, recover the amount he has paid in an action against the county.' We see no reason why the same rule should not be applied to a purchaser who purchases the tax certificate from the county subsequent to the sale to the county. The records pertaining to the assessment of the property and the title of the person purporting to be assessed, being public records, are open to inspection to persons desiring to make purchases at either tax sales or in purchasing tax certificates owned by the county, and the parties making such purchases must make such investigation at their own risk."

After reviewing authorities, the court's conclusion is thus stated:

"It will thus be seen that the leading writers on the subject of taxation agree that, in the absence of legislation authorizing a person to recover, no action can be maintained for the recovery of money paid at tax sales, and clearly the same rule should be applied to purchasers purchasing tax certificates of the county.

The learned circuit court was therefore in error in concluding from the facts found that the plaintiff was entitled to recover in this action."

In Wilson v. Salt Lake County Corporation, supra, it appeared that mining claims were assessed for taxes as patented claims and then sold to the county for delinquent taxes. Wilson alleged these facts in his complaint filed in the district court and also that he had purchased said property from the county by paying for it the amount of taxes for the years 1909 to 1916, both years inclusive, with interest thereon; that as a matter of fact the claims were not patented and that their assessment was without authority of law and illegal; and that his petition presented to the board of county commissioners for a refund of the amount of money thus paid was denied. Judgment in his favor for that sum was given in the lower court, where the provisions of Section 2642 C. L. U. 1907 (Sec. 6043 C. L. U. 1917), reading in part,

"Any taxes, interest and costs paid more than once, or erroneously or illegally collected, may, by order of the board of county commissioners, be refunded by the county treasurer, and the portion of such taxes, interest, and costs of the state, cities, and school districts must be refunded to the county, and the proper officer must draw his warrant therefor in favor of the county";

seem to have been held applicable. Reversing this judgment on review, the following language was employed in the opinion:

"For the purposes of this case, however, let us assume, without deciding, that unpatented mining claims are not legally subject to taxation, still we are of the opinion that under the facts and circumstances alleged in the complaint the plaintiff would not be entitled to a recovery against the county, but that the rule of caveat emptor contended for by the county attorney should apply. The plaintiff was not impelled to pur-

chase the mining claims from the county for the purposes of protection, as in the case where the property owner pays an illegal tax and then justly demands a refund at the hands of the county. By any kind of diligence the plaintiff could just as readily have ascertained the status of the mining claims, as to their being patented or otherwise, before he took a deed of conveyance from the county as subsequent thereto. The public records were open to him, and he was just as much privileged to investigate the status of the claims before purchasing as afterwards. To hold that plaintiff, under the facts and circumstances alleged in his complaint, is not required to exercise the ordinary prudence of a vendee, in our opinion, would be placing a premium upon gross negligence, and be giving the statute referred to herein an interpretation not warranted by its express provisions, and afford a remedy never intended by legislative enactment. Brooks v.

Tulare County, 117 Cal. 465, 49 Pac. 469; Stutsman v. Wallace, 142 U. S. 293, 12 Sup. Ct. 227, 35 L. Ed. 1018."

The court further said:

"Our attention has not been called to any case, and we know of none, in which a recovery was permitted against a municipality under like or similar circumstances as alleged in the complaint under consideration. The payment of the purchase price of the mining claims by the plaintiff to the county was wholly voluntary, and, as we think, made under circumstances unaided by the provisions of the statute he now invokes. Therefore, as at common law, the rule of caveat emptor should be held to strictly apply."

It is true the statutes construed in these cases did not contain language resembling all of that appearing in Section 115-2338, supra, but they very well demonstrate that in order to be entitled to a refund, under circumstances analogous to those described in plaintiff's pleading now under consideration, clear statutory authority must provide therefor.

However, in Schuman v. Board of County Commis-

sioners, 163 Okla. 118, 21 Pac. (2d) 40, a statute was considered, which would seem in some respects at least quite as inclusive in its terminology, if not more so, than the statute we now have before us. That statute (Ch. 30, Sess. Laws Okla., 1925) reads:

"When lands or lots which have heretofore been, or shall hereafter be sold, and tax sale certificates or tax deeds issued by the County Treasurer therefor, on which land or lots no tax was due, or where said sale was, or is otherwise illegal, or a portion of such tax covered improvements which were not on the premises at the time same were assessed the county shall save the purchaser or his assigns harmless by refunding and paying to him or them the original purchase money paid thereon together with subsequent payments with interest from date of payment at Six (6) per cent. per annum. No action for such refund shall be commenced after the expiration of Five (5) years from the time a tax deed might have been applied for, had the sale been valid."

Under it Shuman sought a refund of money from the county. His pleading alleged in substance that he had purchased and received a deed for certain real estate at a resale held by the county treasurer and that the deed was void because of specific defects in the procedure. Analyzing the purport of the statutory language relied upon to permit the action to succeed, and affirming a judgment adverse to the plaintiff, the court advanced these views:

"It will be noted that the provision is for a refund of the original purchase money with interest. The original purchase money of a tax sale certificate or of a certificate tax deed is the amount of the tax, interest, penalties, and costs paid to the county for the tax sale certificate, or, in other words, the amount of the tax on the land purchased, together with the interest, penalties, and costs thereon. The word 'original' was doubtlessly used in the act to limit the amount to be refunded to the amount actually paid to the county treasurer and for the purpose of making clear the fact

that there was to be no refund of any money paid out by the holder of the tax sale certificate for notices or other purposes. Under such a construction the county pays out nothing that it did not receive. The amount refunded may be properly charged by the county treasurer on his books proportionately to the state and its political subdivisions. A materially different situation is presented in the consideration of resale tax deeds. The original purchase price of resale tax deeds may be more or less than the amount of the taxes, interest, penalties, and costs, where the sale is of vacant lots in cities and towns, and it may be equal to or greater than the amount of the taxes, interest, penalties, and costs in other cases. Section 12755, O. S. 1931. The excess is required to be held for the prior owner of the land, to be withdrawn by him within two years. Section 12756, O. S. 1931. If the original purchase money is refunded to the purchaser of a resale tax deed and the original purchase money exceeded the amount of the taxes, interest, penalties, and costs, and the excess was withdrawn by the prior owner of the land, how is the county to be reimbursed therefor? To hold that the Legislature intended that resale tax deeds should be included within the provisions of the act would be to hold that it intended that the county treasurer should refund amounts that had been paid to the county for the use and benefit of prior owners of the land.

"We think that the act is not susceptible of the construction contended for by the plaintiff, and that it does not include resale tax deeds."

This ruling was followed by the same court in Sinclair Prairie Pipe Line Co., et al. v. Excise Board of Tulsa County, 173 Okla. 375, 49 Pac. (2d) 115.

In the case at bar it is plain that the facts pleaded in plaintiff's amended petition do not afford a ground of relief within the first clause of the statute, "when, by mistake or unlawful act of the treasurer, land has been sold on which no tax was due at the time." It was through no fault of the treasurer that the tax

procedure was invalid. The trouble was with the levy, with which that official had nothing to do.

But it is said that the following alternative clause gives vitality to the facts pleaded, viz., "whenever land is sold unlawfully in consequence of any other mistake or irregularity rendering the same void." However, the statute further says that, "the county shall hold the purchaser harmless by paying him the amount of the principle, interest and cost to which he would have been entitled had the land been rightfully sold." The clause last quoted undoubtedly authorizes in a proper case a recovery by the "purchaser" of the redemption money paid to the county treasurer to the extent of the amount for which the land was sold for delinquent taxes, with the interest money thereon necessary to make such redemption and costs. This is made clear by Judge Dillon in Coulter v. The County of Mahaska, 17 Iowa 92, where he had occasion to construe identical language and where he held that the county was not liable for the penalty required to be paid on redemption, nor the interest thereon. To the same effect is Wilson v. Butler County, 26 Neb. 676, 42 N. W. 891, where the opinion was by Judge Maxwell.

The amount required to redeem real property from tax sale indicated by Section 2884, Wyoming Compiled Statutes, 1920, as amended by Section 13 of Chapter 70, Laws of 1923, was "the amount for which the same was sold, with three per centum on the same, with twelve per cent interest per annum on the whole amount of all taxes accruing after such sale, with nine per cent interest per annum on such subsequent taxes," unless the subsequent taxes were paid by the person "for whose benefit the redemption" was made.

This section was amended and re-enacted by Section 1 of Chapter 3, Laws of Wyoming, 1927, and stands

thus in W. R. S., 1931, Section 115-2329, the language thereof pertinent here being,

> "the amount for which the same was sold, with three per cent on the same, with twelve per cent interest per annum on the whole amount, from the day of sale, and the amount of all taxes accruing after such sale, with nine per cent interest per annum on such subsequent taxes, unless such subsequent taxes have been paid by the person for whose benefit the redemption is made, which fact may be known by the collector's receipt. Provided, that after the purchaser shall have given notice of intention to apply for treasurer's deed for the lands embraced in any such certificate, such purchaser shall be entitled to his actual expenses exclusive of attorney's fees incurred in the service of the same."

With these sections in mind, which fix the amount which the purchaser may recover from the county in a proper case, under Section 115-2338, supra, as construed above, in order that he may be held "harmless," we think they make it clear that the section last mentioned cannot be applied to resales by the county where the tax title it held fails. That the county in such case should be required to refund the exceptionally high interest exacted upon redemption and also costs, as well as the principal sum for which the land was sold, in our judgment may not reasonably be maintained. We can, however, see an efficient purpose in the law requiring a high interest rate to be paid by an owner of property who has been so negligent as to allow his land to pass to tax sale.

There is another reason also which leads to the same result. When the county treasurer bids in property at tax sale, as prescribed by Section 115-2340, W. R. S. 1931, and the county makes a resale as authorized by Section 115-2342, W. R. S. 1931, there is no restriction imposed by statute on the amount for which it may sell the property. This amount may be less—in fact a great deal less in case of decline in land values—than

the amount for which the county treasurer bid in the land for the county at tax sale. In such case, if Section 115-2338 should be held applicable, on failure of the tax title the county would be required to refund not merely the purchase price paid to it by its grantee, but a much larger sum. In case the county was able to sell such property at a sum greater than that for which the treasurer bid it in, then, of course, the county would be obligated to refund to its vendee only a fractional part of what the latter paid to it, and the remainder it would retain. The result in the one instance would be unjust to the county, and in the other unjust to the purchaser. We do not believe the legislature intended any such inequitable consequences to follow the adoption of the law under review. It really never intended the law to be applicable at all to tax title resales by the county.

If the lawmaking body of this state shall see fit to enact a statute in clear language, authorizing a purchaser to have a refund from the county on resale of property acquired by it at tax sale, on failure of title, to the extent of the amount of money he paid the county, with reasonable interest—as fair dealing would undoubtedly require—at the same time protecting the municipality in case of its being obliged to pay over to other subdivisions the amount it receives, a situation such as we have here presented would be adequately met. The legislature, however, has not as yet done that. We confess that we are reluctant to reach the conclusion we are obliged to announce in this case, but we have no alternative. No power is vested in this court to rewrite the statutory enactments brought before us for construction.

Finally, we may observe, that no case has been cited to us where under similar statutory language and similar facts a county has been held liable to respond to a refund such as is claimed here, and diligent and careful

search on our part has failed to discover any such case.

We are constrained, therefore, to order that the judgment of the district court be reversed, with instructions to dismiss plaintiff's action.

*Reversed with instructions.*

KIMBALL, Ch. J., and BLUME, J., concur.