THE CITY OF CHICAGO, Plaintiff-Appellee, *v.* LEO SANTOR, Defendant-Appellant.

(No. 60659;

First District (1st Division)—July 21, 1975.

Springer & Carstedt, of Chicago (William D. Carstedt, of counsel), for appellant.

William R. Quinlan, Acting Corporation Counsel, of Chicago (Daniel Pascale and Lucia T. Thomas, Assistant Corporation Counsel, of counsel), for appellee.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

The City of Chicago filed a complaint against Leo Santor (defendant) charging him with operating a public garage in Chicago without a license. After trial, the court found defendant guilty and assessed a fine. Defendant appeals.

The proof showed that defendant owns a garage building in Chicago which he has occupied since 1951, as an office and for his own truck leasing business. Approximately one-half of the space, which defendant does not require for his own use, is leased out to tenants for operation of their own businesses. The tenants pay monthly rental computed on a square foot basis. They use their portions of the space for storage, maintenance and repair of their own trucks and for parking of cars owned by themselves and their employees. Also, they store various personal property and some use the space as a workshop and for servicing of their own vehicles. No work upon any vehicle is done by defendant or his employees. There are 18 tenants who operate a total of 26 vehicles from the garage space. The individual spaces of each separate tenant are designated by lines marked on the floor.

There is no identification such as windshield decals for any of the vehicles which use the space. There is no sign or other indication outside or in the building regarding rental of space and no rates are posted inside the garage. No attendant is on duty but each tenant has his own key. The building has a vehicle door with a sign "Truck Entrance." There is also a side service door for access by individuals.

The legal power of the city to regulate garages stems from a statute last amended in 1961. In its present form, it provides (Ill. Rev. Stat. 1973, ch. 24, par. 11—42—8):

> "The corporate authorities of each municipality may locate and regulate the use and construction of breweries, distilleries, livery, boarding, or sale stables, blacksmith shops, foundries, machine shops, garages, parking lots, camps, accommodating persons in house trailers, house cars, cabins or tents, laundries, and bathing beaches."

The legislative history of this enactment shows that it was originally adopted in 1872, at which time, as we would expect, the words "garages, parking lots" did not appear. (See *Crerar Clinch Coal Co. v. City of Chicago*, 341 Ill. 471, 474, 475, 173 N.E. 484; also Ill. Ann. Stat. ch. 24, par. 11—42—8, Historical Note at pages 191, 192 (Smith-Hurd 1962).) At that time, the section read:

> "To direct the location and regulate the use and construction of breweries, distilleries, livery stables, blacksmith shops and founderies [*sic*] within the limits of the city or village."

In 1911, the section was amended by insertion of the word "garages" and by other amendments not material here. In 1919 and 1921, there were further amendments which were declared unconstitutional. (*People ex rel. Roos v. Kaul*, 302 Ill. 317, 134 N.E. 740.) Thereafter, the supreme court held that the statute in form as amended in 1911 remained in force.

(*Rippinger v. Niederst,* 317 Ill. 264, 148 N.E. 7.) The word "garage" has persisted in amendments made in 1927 and 1941. The words "parking lots" were added in 1941, in accordance with *City of Chicago v. Ben Alpert, Inc.,* 368 Ill. 282, 13 N.E.2d 987, and *Stearns v. City of Chicago,* 368 Ill. 112, 13 N.E.2d 63. In 1961, the section was given its present form by the inclusion of "camps accommodating persons in house trailers, house cars, cabins or tents * * *."

The word "garages," as used in this statute, has been authoritatively construed by the supreme court as meaning "public garages" only; thus negating power or authority in the city to regulate or license private garages. (*Crerar Clinch Coal Co. v. City of Chicago,* 341 Ill. 471, 173 N.E. 484.) The supreme court based this conclusion upon the then firmly established principle that cities were creatures of the legislature without inherent powers and derived all of their authority from statutes which granted it. These statutes were to be strictly construed with any fair or reasonable doubt regarding the existence of the power to be resolved against the municipality. See 341 Ill. 471, 475, and cases there cited.

The ordinances in question before us are sections 156-13 and 156-15 of the Municipal Code of Chicago enacted in 1939, which provide:

"156-13. The term 'public garage' as used in this chapter is hereby defined as meaning any building, structure, premises, enclosure, or other place, except a public way, within the city, where two or more motor vehicles are stored, housed, or parked for hire, in a condition ready for use, or where rent or compensation is paid to the owner, manager or lessee of the premises for the housing, storing, sheltering, keeping, or maintaining of such motor vehicles. * * *

* * *

156-15. No person shall engage in the business of a public garage without first having obtained a license therefor."

■■ Section 156-15 appears to be within the legal authority of the city as above set forth. However, in our opinion, the resolution of the case before us depends upon whether the definition of "public garage" as set forth in section 156-13 is authorized by the grant of power contained in the enabling statute. It would seem clear and definite that the city cannot broaden its legal powers by the strategem of adopting an overbroad and legally impermissible definition of "public garage."

■■ In this regard, we have considered the Illinois Constitution of 1970, article VII, section 6(a), which classifies the City of Chicago as a home rule unit and which provides that it "may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public

health, safety, morals and welfare; to license; to tax; and to incur debt." This provision of the constitution has been construed as intending "to give a qualifying unit of local government constitutional authority to exercise any power and perform any function pertaining to its government and affairs." *Forestview Homeowners Association, Inc. v. County of Cook,* 18 Ill.App.3d 230, 237, 309 N.E.2d 763.

■■ This provision became effective on July 1, 1971, long after passage of the ordinance here involved. Therefore, it cannot be depended upon as a basis for the legal power of the city to enact the ordinance. That power can only exist, if at all, by action of the legislature in the statute above cited. In *Two Hundred Nine Lake Shore Building Corp. v. City of Chicago,* 3 Ill.App.3d 46, 278 N.E.2d 216, this court held that enabling legislation purporting to grant power to a city, but passed after the date of the ordinance there in question, could not constitute a source of legislative authority to adopt the ordinance. This court there held that since the ordinance was "void for want of express statutory authority to enact it, it had no legal existence whatsoever." (3 Ill.App.3d 46, 51.) In other words, "The subsequently enabling legislation could not and did not bring vitality to this otherwise barren attempt of the municipality to regulate the social evil." (3 Ill.App.3d 46, 51.) We agree completely with this principle of law stated in *Two Hundred Nine Lake Shore Building Corp.* In our opinion, the same result must follow regarding attempted application of the 1970 Constitution to the ordinance before us. To hold otherwise would give this provision of the 1970 Constitution retroactive effect which was neither expressed, nor intended by its framers or by the people of Illinois.

It follows necessarily that the prosecution of defendant for operating his business without a license must stand or fall upon the grant of legislative power in the statute above cited. In other words, if the evidence shows that the defendant was operating a public garage as that term is legally defined in accordance with statutory definition, the prosecution was proper. If not, it cannot stand. The ordinance may not depart from its legal authority by broadening its definition of "public garage" to include a private garage. We have carefully considered and must necessarily reject the city's contention regarding the rationale for requiring licensing of the type of facility here involved predicated upon production of noise and presence and use of gasoline. (See *People ex rel. Busching v. Ericsson,* 263 Ill. 368, 372, 105 N.E. 315.) The decisive issue then is the proper legal definition of the term "public garage."

"Public" and "private" are ordinary words of accepted meaning. Actually each is the antithesis of the other. Webster defines "public," used here as an adjective, as "accessible to or shared by all members of the

community." "Private" is defined as "intended for or affecting a particular person, group, or class." Webster's Seventh New Collegiate Dictionary.

The legal definition of these words is quite similar. For example, a highway is "public" when "the public generally has the free and unrestricted right to use it." (*City of Chicago v. Pennsylvania R.R. Co.*, 41 Ill.2d 245, 251, 242 N.E.2d 152, and cases there cited.) The actual use of the road or other facility is not of controlling importance "as it is the right of public travel and not the exercise of the right which constitutes a road a public highway." (*Department of Public Works & Buildings v. Farina*, 29 Ill.2d 474, 478, 194 N.E.2d 209.) See also *Rauworth v. Commercial Insurance Co.*, 24 Ill.App.2d 16, 19, 163 N.E.2d 846, citing *Wakem & McLaughlin, Inc. v. Royal Indemnity Co.*, 241 Ill.App. 427, defining "public entrances, halls and stairways" covered by a policy of insurance as those "open to the use of the general public" and "not under the sole control of the insured" and as being the opposite of "private."

■■ Applying this definition here, a public garage is one which motorists generally have free and unrestricted right to use subject, of course, to uniform conditions such as payment of charges and availability of space. On the contrary, a private garage is one in which use of the premises is restricted to designated persons which other members of the public have no right to use. Neither the extent of the space, nor the number of vehicles involved affects the classification of the garage for this purpose. The central and indispensable test of a public garage is existence of the right of public access and use thereof.

■■ It follows from this analysis that the ordinance definition is far too broad. Section 156—13 covers in the first portion thereof, any premises where two or more vehicles are stored for hire. This would include a vast number of strictly private garages. Alternatively the balance of the section covers premises where rent is paid to an owner or lessee for storing of motor vehicles. This language also includes many private garages. The definition in the ordinance is thus not in conformity with the legal power of the city and with the proper legal definition of the term "public garage."

It is equally evident that defendant's business is not that of a public garage. The premises are operated as a garage but not as a public garage. Motorists in general have no right to use or access. The public has no unrestricted right to use the premises subject only to availability of space or payment of necessary charges. Private arrangements must be made with defendant for lease of the premises. In the context of the factual situation here presented, neither the number of tenants, nor the number of vehicles involved has any decisive bearing upon classification

of defendant's business from this point of view. Nor, as the city contends, is the situation before us an attempt to disguise a public garage by adopting a private form as in *City of Chicago v. Logan Square Motor Club,* 189 Ill.App. 142. There, a public garage organized a not for profit "club" and charged "dues" to its otherwise unrestricted membership for the parking privilege. It follows that the city has no legal right to license defendant's garage.

A caveat must be stated. Our conclusions that the definition of "public garage" as stated in the ordinance includes matters beyond the legal authority of the city as it existed when the ordinance was enacted and that defendant is not operating a public garage within the accepted legal definition of that term are decisive of the litigation. We expressly abstain from deciding the issue not before us regarding the rights of the parties in event of passage of a new ordinance upon this subject matter.

The judgment appealed from is accordingly reversed.

Judgment reversed.

BURKE, P. J., and SIMON, J., concur.